## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 19-CR-565 |
| v. | |
| EDWARD LEE FILER, ROBERT JOSEPH GEREG, and PAUL MICHAEL KELLY | Honorable Harry D. Leinenweber |

### MOTION FOR JUDGMENT OF ACQUITTAL

Defendant Edward Filer, through his undersigned counsel and pursuant to Federal Rule of Criminal Procedure 29, respectfully requests that the Court enter an order granting judgment of acquittal and dismissing the Second Superseding Indictment (Dkt. 64) ("Indictment") in its entirety. In support of this motion, Mr. Filer states as follows.

### INTRODUCTION

One June 25, 2021, this Court granted Mr. Filer's motion for judgment of acquittal on the majority of the charges in this case. Mr. Filer is entitled to judgment on the remaining Counts. There are only two issues remaining in the case and both should be decided as a matter of law.[1]

The Court correctly held that the scheme to defraud charged in Counts 1 and 2 depends entirely on the validity of BWC Capital's lien on the assets of Barsanti Woodwork ("Woodwork"). The Court further held that there is one open question to determine the validity of BWC Capital's lien: "whether Kelly controlled BWC Capital such that when he stepped into Harris Bank's shoes, Kelly acquired his own lien. If Kelly, in fact, acquired his own lien, the lien

---

[1] To avoid duplicative briefing, Mr. Filer expressly incorporates by reference all of the facts and arguments in his prior Motion for Judgment of Acquittal, Dkt. 159, as if fully set forth herein.

would have been extinguished." Exhibit A, *Excerpt of Transcript of Proceedings Before The Honorable Harry D. Leinenweber*, June 25, 2021, at 41:4-7. As set forth below, this is a question of law that the Court must decide—it cannot be decided by the jury. The Court should determine, as a matter of law, the Government has failed to prove beyond a reasonable doubt that BWC Capital's lien was extinguished and as a result, has failed to prove a scheme to defraud, let alone a scheme in which Mr. Filer knowingly engaged with intent to defraud.

With respect to Count 8, the Court declined to grant judgment in Mr. Filer's favor because, "[t]aken in the light most favorable to the government, at this stage … a rational jury could conclude the documents were responsive and/or the decision to withhold them was done with fraudulent intent." *Id.* at 48:10-13. But the evidence that the jury heard the Government's case-in-chief was inaccurate and misleading. During the testimony of Freeborn & Peters' General Counsel, Steve Hartmann, the Government published several emails to the jury and implied that Mr. Filer had a role in withholding them. Mr. Hartmann was recalled during the defense case and clarified that his testimony was not accurate. In light of all the evidence now in the record, no reasonable jury could convict Mr. Filer on Count 8.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 29(a) provides that, "after the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." A Rule 29 motion should be granted where "viewing the evidence in the light most favorable to the prosecution, the record contains no evidence on which a rational jury could have returned a guilty verdict." *United States v. Murphy*, 406 F.3d 857, 861 (7th Cir. 2005) (affirming judgment of acquittal under Rule 29(c) where "a vital link between the evidence and the charge in the indictment [was] missing"). In other words, "[a] Rule 29 motion calls on the court to

distinguish between reasonable inferences and speculation." *United States v. Jones*, 713 F.3d 336, 340 (7th Cir. 2013) (affirming judgment of acquittal where "[t]he jury's verdict . . . relied on several such speculative inferences"). At the end of the day, the Court must grant a Rule 29 motion if the Government's evidence gives "equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence," because in that situation, "a reasonable jury must necessarily entertain reasonable doubt." *United States v. Cassese*, 428 F.3d 92, 99 (2d Cir. 2005).

## ARGUMENT

### I. Mr. Filer is Entitled to a Judgment of Acquittal on Counts 1 and 2.

As Mr. Filer argued in his prior Motion for Judgment of Acquittal, and as this Court recognized in ruling on the same, the fraud counts turn on the validity of BWC Capital's lien. The Court held that the open question on these Counts "is whether the lien was extinguished when Harris Bank transferred the debt to BWC Capital." Exhibit A, at 40:12-13. This open question, however, is one of law and must be answered by the Court. The Court should grant Mr. Filer's motion on the fraud counts because: (1) the Government has presented insufficient evidence to prove beyond a reasonable doubt that BWC Capital's lien was extinguished, and (2) even if the lien were extinguished, no reasonable juror could find that Mr. Filer acted with intent to defraud.

Before embarking on this analysis, it is important to note that Government used Professor Bruce Markell's rebuttal testimony to inject numerous improper and incorrect legal opinions into the case. This testimony hopelessly confused the jury and created a significant risk that they might convict based on Markell's description of the law rather than the Court's. *See Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988) (en banc) ("[T]he jury may believe the attorney-witness, who is presented to them imbued with all the mystique inherent in the title 'expert,' is

more knowledgeable than the judge in a given areas of the law."). For example, Professor Markell told the jury that a transaction with a party's consultant or agent cannot be considered an arm's length transaction. Exhibit H, *Excerpt of Testimony of Bruce Markell*, June 29, 2021, at 3:8-4:25. This improper and incorrect opinion is contrary to the law of the Seventh Circuit, which holds that even transactions with an officer of a party can be considered "an arms-length transaction, at least for purposes of criminal law." *United States v. Weimert*, 819 F.3d 351, 366 (7th Cir. 2016). Professor Markell offered similarly improper legal conclusions on various civil law concepts, such as an agent's ability to hold the debt of a principal, the doctrine of merger, bad-faith enforcement of liens, and the like. *See Generally* Exhibit H. It is against this backdrop that a confused jury will deliberate, attempting to decide civil questions of law and apply them to the facts of a civil case. The Court should take this case from them. Mr. Filer is entitled to judgement of acquittal on the fraud counts.

## A. Whether BWC Capital's Lien Was Extinguished is a Question of Law.

The theory upon which the Government's case rests appears to be one of "merger," which provides that "when the same person who is bound to pay is also entitled to receive, there is an extinguishment of rights." *In re Kreisler*, 331 B.R. 364, 378 (Bankr. N.D. Ill. 2005) (quotation omitted). In this case, however, there is no dispute that the debtor and the creditor were not the same person—they were two separate corporate entities: Woodwork and BWC Capital. Therefore, for the merger doctrine to apply, the Court must determine whether Kelly's alleged control of both companies warrants disregarding corporate structures and treating the two entities as one in the same. *Id.* at 378-79 (where Garlin Mortgage Corp. was the holder of the mortgage and K&E LLC was the mortgagor, but the trustee alleged that a merger occurred because the same people controlled both entities, the court was required "to find that Garlin is not a legal entity separate and distinct form K&E LLC, and to conclude that they are one in the

same"). In order to make this determination, Illinois law requires the Court to apply a veil-piercing analysis. *Id.*

Although the required veil-piercing analysis involves factual findings, the ultimate determination of whether to disregard the separate corporate entities due to Kelly's alleged control of BWC Capital is a question of law for the Court. *See, e.g.*, *Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.,* 356 F.3d 731, 737 (7th Cir. 2004) ("[U]nder Illinois law, piercing the corporate veil is an equitable remedy to be determined by the court."); *Jones v. Hoosman*, No. 05 C 2909, 2006 WL 1302524, at *4 (N.D. Ill. May 9, 2006) (striking plaintiff's jury demand "insofar as it relates to determination or whether or not we should pierce the corporate veil on the basis of an alter ego theory," because "[w]hether to pierce the corporate veil is a matter of the trial court's discretion"). Whether to apply the merger doctrine is not an issue for lay jurors in a criminal case. The Court must engage in this equitable analysis and determine as a matter of law whether the Government has proven merger—and in turn, proven an extinguished lien and a scheme to defraud—beyond a reasonable doubt.

## B. The Government Has Presented Insufficient Evidence That the Lien Was Extinguished.

First, it is undisputed that BWC Capital was owned by Gereg. To apply the merger doctrine, there must "a unity of interest *and ownership*" of the creditor and debtor. *In re Kreisler*, 331 B.R. at 379 (emphasis added); *see also Access Realty Grp., Inc. v. Kane*, 2019 IL App 1st 180173 (2019), ¶ 26 (finding merger because the debt was held by an entity that the debtor "*wholly owns and controls*") (emphasis in original). Accordingly, the merger theory cannot get off first base, and the Court should grant this motion on that basis alone.

Even putting that issue aside and proceeding under a theory that Kelly "controlled" BWC Capital, the Government has provided insufficient evidence to warrant ignoring the corporate

structures. "The Illinois Supreme Court has recognized … that a corporate entity will be disregarded, and its veil of limited liability pierced, when two requirements are met: (1) there must be such a unity of interest and ownership that the separate personalities of the corporation and individual no longer exist; and (2) adherence to the fiction of separate corporate existence would sanction a fraud or promote an injustice." *In re Kreisler*, 331 B.R. at 379. "Factors that the Illinois courts have considered in the determination of whether the first prong of the test has been met are: (1) the failure to maintain adequate corporate records or to comply with corporate formalities; (2) the commingling of funds or assets; (3) undercapitalization; and (4) one corporation treating the assets of another corporation as its own." *Id.*

Because this is a criminal case, the Government must prove beyond a reasonable doubt that Kelly controlled BWC Capital to such an extent that it warrants disregarding the separate corporate entities. There is nothing in the record that comes remotely close to meeting this burden. Most notably, Government has put no evidence into the record that BWC Capital ignored corporate formalities. BWC Capital had appropriate formation documents, an operating agreement, and other appropriate corporate documentation. *See, e.g.*, Freeborn_053. Nor is there any evidence of commingling funds. To the contrary, Kelly testified that he did not have access to BWC Capital's bank account and had no control over the company's money. Exhibit B, *Excerpt of Testimony of Paul Kelly*, June 16, 2021 PM, at 61:23-62:21. Indeed, absent the K Family Trust Agreements—which all parties and the Court agree were ineffective—it is unclear how Kelly exercised any control over BWC Capital whatsoever. The facts of this case would provide a dubious basis to apply the merger doctrine in a civil case. They are woefully insufficient in a criminal case where the Government's burden of proof is higher.

6

Because the Government has not presented sufficient evidence that the merger doctrine should be applied, the Government has failed as a matter of law to prove that BWC Capital's lien was extinguished. Accordingly, no reasonable jury could find a scheme to defraud and Mr. Filer is entitled to judgment of acquittal on Counts 1 and 2.

### C. Even if the Lien Was Extinguished, No Reasonable Jury Could Find That Mr. Filer Acted With Intent to Defraud.

Even if the Court engages in the complex legal analysis set forth above and finds that the merger doctrine should apply, there is absolutely no evidence that Mr. Filer knew the debt was extinguished in 2013. There is no evidence that he engaged in any merger analysis in 2013 or that as a construction lawyer, he even knew what the doctrine of merger was. All of the evidence in the record indicates that Mr. Filer *believed* that BWC Capital held a valid lien on Woodwork's assets. Mr. Filer testified that he believed Woodwork owed BWC Capital the face amount of the loan less the $575,000 credit for the use of Woodwork's accounts receivables. Exhibit C, *Excerpt of Testimony of Edward Filer*, June 28, 2021 AM, at 67:6-68:24. Mr. Kelly provided the same testimony. Exhibit B, at 43:14-24. Tellingly, the Government chose not to call Mr. Gereg, but his deposition testimony was read into evidence and clearly demonstrates that he also believed Woodwork owed BWC Capital the remaining debt less the credit Woodwork received for the purchase price, and that BWC Capital held a lien on Woodwork's assets. *See* PUBDOC_014, at 119:3-12. Thus, whatever the Court's answer to the murky law-school-exam question posed by the Government's theory, the record is clear all parties involved believed BWC Capital's lien was valid and that the company could exercise its legal rights accordingly. There is simply no documentary or testimonial evidence that Mr. Filer believed the lien was extinguished. On this record, no reasonable jury could find that Mr. Filer acted with intent to defraud.

## II.     <u>Mr. Filer is Entitled to a Judgment of Acquittal on Count Eight.</u>

Count 8 charges Mr. Filer with violating 18 U.S.C. § 152(9) by withholding documents from the trustee related to the membership interest assignment agreements. In order to prevail on this count, the Government must prove beyond a reasonable doubt that (1) there was a bankruptcy proceeding, (2) Mr. Filer knowingly withheld records from the trustee entitled to its possession, (3) the records related to the property or financial affairs of the debtor, and (4) Mr. Filer acted with intent to deceive. *See* Pattern Criminal Jury Instructions of the Seventh Circuit (2020 Ed.), at 195. The Government has failed to prove elements two through four.

As an initial matter, the Government's case-in-chief was tainted by misleading and inaccurate testimony elicited from Freeborn & Peters' General Counsel, Steve Hartmann. The Government published several documents through Mr. Hartmann and suggested to the jury that Mr. Filer withheld these documents from Freeborn's initial production to the trustee in violation of 18 U.S.C. § 152(9). In reality, Mr. Filer had absolutely nothing to do with withholding these documents. For example, Mr. Hartmann testified that Government Exhibits Freeborn_204 and Freeborn_210 were withheld from the April 2014 production (in which the Government contends Mr. Filer was involved) but were subsequently produced to the trustee by Mr. Hartmann in 2015. *See* <u>Exhibit D</u>, *Excerpt of Testimony of Steve Hartmann*, June 24, 2021, at 27:24-29:23. When recalled, Mr. Hartmann admitted that his original testimony was not accurate.[2] These documents were *never* produced to the trustee by Mr. Hartmann in Freeborn's subsequent productions. Rather, *Mr. Hartmann* marked these documents as privileged withheld them from production. The Government also elicited testimony suggesting that Mr. Filer wrongfully withheld Government Exhibits Freeborn_072 and Freeborn_114 from the April 2014 production. <u>Exhibit</u>

---

[2] Due to the timing of this motion, a transcript of Mr. Hartmann's testimony is not yet available. Mr. Filer will supplement this submission at the Court's request.

D, 30:11-32:3. Although these documents were produced by Mr. Hartmann in subsequent productions, Mr. Hartmann clarified that Mr. Filer made these documents available for collection by Freeborn's IT department in February of 2014, after which they were loaded into a Relativity database for review to determine whether they were responsive to the trustee's document requests. Freeborn's computer data showed that Ashley Brandt marked these documents as non-responsive and privileged *before* ever discussing the trustee's subpoena with Mr. Filer following his April 7, 2014 email. Thus, any suggestion that Mr. Filer had a role in withholding these documents also was misleading.

The ***only*** documents that Mr. Filer had any role in withholding were fifteen documents related to the K Family Trust. Withholding these documents cannot justify a conviction. The Court should grant judgment of acquittal on Count 8 for two reasons.

First, the Court should determine, as a matter of law, that the K Family Trust documents were non-responsive to the trustee's subpoena. The subpoena specifically requested documents related to "the Debtor," which is defined as "Woodwork and anyone acting or purporting to act on its behalf." Filer Trial Exhibit 1, at 13442. Based on the plain language of the subpoena, the documents were non-responsive. The agreements were between the K Family Trust and BWC Capital and Millwork. Although Kelly was an agent of Woodwork, he was not acting in that capacity when he signed the agreements—he was acting on behalf of the K Family Trust. The trustee was not entitled to documents between third parties unrelated to the debtor.

Lawyers across the country make difficult responsiveness determinations every day. Reasonable lawyers may disagree. There may be disputes. And when those disputes occur, they are resolved ***by a court***. Legal analysis concerning broad and confusing document requests should not be performed by the jury in a criminal case where an attorney's liberty is at stake. The

Court, not the jury, should perform the requisite analysis and determine that the K Family Trust Documents were not responsive.

Second, even if the documents were responsive, there is absolutely no evidence in the record that Mr. Filer acted with intent to deceive. Mr. Filer took the stand testified that he believed the K Family Trust documents were non-responsive. Exhibit C, at 22:21-25; Exhibit E, *Excerpt of Testimony of Edward Filer*, June 28, 2021 PM, at 16:20-17:5. Robert Chapman testified that a determination of non-responsiveness was reasonable, and that once Mr. Filer reached that determination, he was duty-bound to withhold the documents. Even Mr. Brandt, who strongly disagreed with Mr. Filer's conclusion, likewise testified that Mr. Filer told him he believed the documents were non-responsive. *See* Exhibit F, *Excerpt of Testimony of Ashley Brandt*, June 22, 2021 PM, at 116:11-13. And both Brandt and Hartmann (who later chose to produce the documents), admitted that they did not have the information they needed to make an accurate determination as to the responsiveness of the documents. *See* Exhibit D, at 40:13-41:20; Exhibit G, *Excerpt of Testimony of Ashley Brandt*, June 23, 2021 AM, at 85:20-86:12. The record is simply devoid of any evidence from which a reasonable jury could infer intent to deceive. Mr. Filer is entitled to judgment of acquittal on Count 8.

## **CONCLUSION**

WHEREFORE, Mr. Filer respectfully requests that the Court enter an Order granting judgment in his favor and dismissing the Indictment in its entirety.


Dated: June 29, 2021                              Respectfully submitted,


                                                  */s/ Ronald S. Safer*
                                                  Ronald S. Safer
                                                  Valarie Hays
                                                  Eli J. Litoff
                                                  RILEY SAFER HOLMES & CANCILA LLP

70 W. Madison Street, Suite 2900
Chicago, IL 60602
(312) 471-8700
rsafer@rshc-law.com
vhays@rshc-law.com
elitoff@rshc-law.com

*Attorneys for Edward Lee Filer*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 29, 2021 I caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

*/s/ Eli J. Litoff*