IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

    v.

EDWARD LEE FILER, ROBERT
JOSEPH GEREG, and PAUL
MICHAEL KELLY,

                Defendants.

Case No. 19 CR 565

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Per the Seventh Circuit's November 22, 2021 Order (Dkt. No. 203), the Court vacates its prior ruling denying Defendant Filer's Motion for a New Trial as moot. (Dkt. No. 184.) For the reasons stated herein, Defendant Filer's Motion for a New Trial (Dkt. No. 179) is granted.

## I.  BACKGROUND

### A.  Procedural History

Defendant Edward Filer and his co-defendants, Paul Kelly and Robert Gereg, were charged in a twenty-one-count Second Superseding Indictment (the "Indictment"). Filer was charged with twelve joint counts of wire and bankruptcy fraud (Indict. Counts 1–7, 9–11, 13–14, Dkt. No. 64), an individual count of bankruptcy fraud (*Id.* Count 8), and a single count of making a false statement

under penalty of perjury. (*Id.* Count 15.) Prior to trial, the Court granted the Government's Motion to Dismiss Counts 7, 9, 10, and 13 as to Filer. (Dkt. No. 147.) Filer proceeded to trial on the remaining Counts beginning on June 11, 2021.

Following the close of the Government's case-in-chief, the Court partially granted Filer's Motion for Judgement of Acquittal and entered judgment of acquittal as to Counts 3-6, 11, 14, and 15. (Dkt. No. 165.) Following the close of Filer's case-in-chief, the Court partially granted Filer's Renewed Motion for Judgment of Acquittal and entered judgement of acquittal as to Count 8. (Dkt. No. 172.) The jury therefore was only charged with deliberating on and returning a verdict as to the wire fraud allegations set forth in Counts 1 and 2.

On July 1, 2021, the jury returned a verdict of guilty on Counts 1 and 2. (Dkt. No. 174.) On July 16, 2021, Filer moved for Judgment of Acquittal or a New Trial. (Dkt. No. 179.) On September 23, 2021, the Court granted Filer's Motion for Judgement of Acquittal and denied as moot the Motion for a New Trial. (Dkt. No. 184.) On October 22, 2021, the Government appealed. (Dkt. No. 185.) On November 22, 2021, the Seventh Circuit entered an order conditionally remanding this case and instructing the Court to determine whether the Motion for a New Trial should be granted if the judgment of acquittal is vacated or reversed. (Dkt. No. 203.)

**B. Trial Testimony**

The facts that follow are drawn from the pre-trial and trial transcripts, as well as trial exhibits. In the interest of brevity, the Court only addresses the facts relevant to Counts 1 and 2, as they are the only Counts at issue in this Motion.

Filer, Kelly, and Gereg were charged with an alleged scheme to shield the assets of Kelly's company, Barsanti Woodwork, from certain unsecured creditors. The Government traces the scheme to 2012, when Defendant Kelly owned Barsanti Woodwork, Defendant Filer was an attorney and Kelly's neighbor, and Defendant Gereg was a distressed debt consultant still unknown to the other parties in this case. At that time, Barsanti Woodwork was struggling to keep up with its mounting debts, including payments on a $1.6 million loan from Harris Bank. The Harris Bank debt was secured by a lien on Barsanti Woodwork's assets, including its accounts receivables.

In early 2013, Kelly engaged Filer and his law firm to represent Barsanti Woodwork in various lawsuits brought by the company's creditors, including Harris Bank and the Carpenters' Trust Funds. During the course of this representation, Filer brought in several colleagues to assist with the Barsanti Woodwork representation, including Ashley Brandt, Sam Lichtenfeld, and Tom Fawkes.

Shortly after engaging Filer, Kelly also retained Gereg to identify sources of financing for Barsanti Woodwork. Unlike Filer, who Kelly knew socially, Gereg was a distressed debt professional who was recommended by a banker who declined to buyout the Harris Bank loan. Kelly and Gereg signed an engagement letter pursuant to which Gereg would receive a fee if he obtained financing for Barsanti Woodwork. Although Gereg was unsuccessful in obtaining alternative financing through a third-party, he did successfully negotiate with Harris Bank to purchase Barsanti Woodwork's debt himself, at the discounted price of $575,000. As part of the negotiated terms, the parties agreed that the $575,000 would be paid from Barsanti Woodwork's accounts receivables. For Harris Bank, the benefit of this arrangement was obvious: a bird in the hand is worth two in the bush. For Kelly, the proposed arrangement was similarly beneficial: if he could restructure the burden of the Harris Bank, debt he could focus on making payments to his other creditors and getting his business back into the black.

Initially, Gereg intended to purchase the debt through a company named BWC Holdings, which was owned by Kelly, with Gereg as its nominee. During the negotiations, however, Harris Bank's attorney, James Sullivan, requested documents showing that Gereg was the sole owner of the entity purchasing Barsanti Woodwork's debt.

- 4 -

Ultimately, Defendants decided to form a shell company called BWC Capital LLC with Gereg as the sole owner. Filer expressed misgivings in an email to Kelly over this decision: at this point Kelly and Filer had only known Gereg a few months. Filer was concerned that making Gereg the debt-holder could result in him taking ownership of Barsanti Woodwork. Kelly and Filer determined that they could mediate this financial concern by drawing up papers that, if executed, assigned Gereg's interest in BWC Capital to the K Family Trust, an entity that ultimately would be controlled by Kelly. Despite this plan, the K Family Trust was never created. And while Gereg executed the assignment agreement, the document was never countersigned. During his negotiations, Gereg did not inform Harris Bank about the existence of the unexecuted K Family Trust assignment documents.

On May 2, 2013, BWC Capital acquired the remaining Harris Bank debt, which included the lien on Barsanti Woodwork's assets. Kelly testified at trial that, for a short period after the pressure of the Harris Bank subsided, he began paying creditors and attempting to resume normal operations. Purchasing the Harris Bank debt did not, however, cure Barsanti Woodwork's creditor problems. The company continued to face pressure from other creditors, most importantly the Illinois Department of Revenue, who controlled its business license, and the Carpenter's Union,

who controlled its employees. The non-Harris Bank debts exceeded the value of Barsanti Woodwork's assets.

In May 2013, in an effort to avoid Barsanti Woodwork having to liquidate its assets and ultimately cease operations, Defendants drafted and backdated a change of terms agreement between Barsanti Woodwork and BWC Capital. The backdated document inserted a confession of judgment provision into the contracts governing the acquired Harris Bank notes. A confession of judgment is used to short-circuit lawsuits by having the debtor agree that, due to the debt, the creditor is entitled to the debtor's assets. Using the confession of judgment provision, BWC Capital filed suit against Barsanti Woodwork in the Circuit Court of Cook County seeking to enforce its lien on the company's assets.

On July 3, 2013, the Circuit Court of Cook County accepted the confession of judgment and entered judgment against Barsanti Woodwork. The judgment ordered Barsanti Woodwork to assign certain property to BWC Capital in order to fulfil the judgment. On August 21, 2013, Kelly circulated an executed version of the Assignment and Conveyance of Title called for by the Cook County judgment. The document assigned all of Barsanti Woodwork's assets to BWC Capital. The assignment document was backdated to July 3, 2013, which corresponded to the date of the Cook County judgment. Kelly's

email circulating the executed Assignment and Conveyance of Title is the wire that forms the basis for Count 1.

The next day, August 22, 2013, Gereg emailed Kelly, Filer, and attorneys Brandt and Lichtenfeld. In the email, Gereg explained that based on the Assignment and Conveyance of Title, BWC Capital was now the proper owner of Barsanti Woodwork's accounts receivables. According to Gereg, going forward all of Barsanti Woodwork's outstanding accounts receivable checks should be immediately endorsed over to BWC Capital. Gereg's August 22, 2013 email forms the basis for Count 2.

Central to both Counts 1 and 2 is the validity of BWC Capital's lien on Barsanti Woodwork's assets. During its case-in-chief, the Government called just one expert, Professor Bruce Markell, as an expert in contracts, commercial law, and bankruptcy. Markell's testimony focused on bankruptcy topics, including terms and procedures, the mechanics of various bankruptcy filings, the formation of the bankruptcy estate, and the rights and roles of the parties involved in the bankruptcy process. Markell also spoke generally on contract formation, secured debt, and debt collection practices. Professor Markell did not offer any testimony regarding liens.

During Filer's case-in-chief, expert Neil Bivona testified regarding commercial bank practices. For example, Bivona testified

as to the definition of a "friendly creditor" and that friendly
and hostile creditors enjoy the same rights towards debtors.
Opining further, Bivona stated that as long as the legal
creditor/debtor relationship is established the debtor would be
able to exercise a validly held lien and foreclose on the
encumbered assets. Underlying Bivona's testimony and opinions was
his conclusion that BWC Capital held a valid and enforceable lien.
Bivona did not, however, testify as to how he reached his
conclusion that the lien was valid.

During its rebuttal case, the Government recalled their
bankruptcy, contracts, and commercial law expert, Professor
Markell. In his rebuttal testimony, Markell testified that he
disagreed with Bivona's conclusion that BWC Capital owned the
Barsanti Woodwork notes acquired from Harris Bank. Markell
reasoned that BWC Capital could have acquired the debt as Barsanti
Woodwork's agent. Under those circumstances, BWC Capital's
purchase of the debt was on Barsanti Woodwork's behalf and
following the transaction the debt would belong to Barsanti
Woodwork. A creditor and debtor cannot be the same person or
entity, so, under those circumstances the debt would be
extinguished. Markell also testified that the unexecuted K Family
Trust Assignment documents, which only had Gereg's signature, gave
Kelly an option to sign the documents at any time, and thus acquire

- 8 -

BWC Capital and its interests in the Harris Bank notes. According to Markell, based on these documents Kelly's option meant that he should be treated as BWC Capital's owner.

The Government used this rebuttal testimony as a lynchpin to its closing argument. The Government argued that Kelly, not Gereg, purchased the Harris Bank debt. The Government argued that the jury should find that the debt and the lien were extinguished. The Government then asked the jury to find that Filer, Gereg, and Kelly illegitimately used the extinguished lien to prevent Barsanti Woodwork's legitimate creditors from receiving their fair share of the company's assets. As set forth in the procedural history, *supra,* the jury returned a guilty verdict on those Counts 1 and 2 and are basis for the Court's Motion for New Trial.

## II.  <u>LEGAL STANDARD</u>

Federal Rule of Criminal Procedure 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). Upon review of the evidence a new trial is appropriate "only if there is a reasonable possibility that [an identified] trial error had a prejudicial effect on the jury's verdict." *United States v. Maclin,* 915 F.3d 440, 444 (7th Cir. 2019) (citing *United States v. Flournoy,* 842 F.3d 524, 530 (7th Cir. 2016)). The Seventh Circuit has also recognized that "the exercise of power conferred by Rule 33 is

- 9 -

reserved for only the most extreme cases." *United States v. Peterson,* 823 F.3d 1113, 1122 (7th Cir. 2016) (quotations and citations omitted). The Court will therefore only grant a Rule 33 motion "where the evidence preponderates so heavily against the defendant that it would be a manifest injustice to let the guilty verdict stand." *United States v. Conley,* 875 F.3d 391, 399 (7th Cir. 2017) (quotations and citations omitted).

### III.  ANALYSIS

Filer moves for a new trial on three grounds. First, Filer argues that Professor Markell's expert testimony was improper and unfairly prejudicial. Second, Filer argues that the lack of evidence related to motive, intent, or actual wrongdoing resulted in a jury verdict that is contrary to the weight of evidence. Third, Filer argues that the Government presented misleading and confusing evidence that casts doubt on the jury verdict. For the reasons set forth below, the Court finds the prejudice introduced by Markell's testimony sufficient to warrant a new trial.

### A.  Professor Markell's Expert Testimony

Filer first argues he is entitled to a new trial because Professor Markell's testimony was improper and unfairly prejudicial. Filer bases this argument on both the timing of the Government's disclosure of Markell's rebuttal opinions and the

substance of his testimony. The Court considers each argument below.

### 1.  *The Timing of Markell's Rebuttal Disclosures*

Filer argues that the Government's disclosure of Professor Markell's rebuttal testimony the day before he provided such testimony was fundamentally unfair. In response, the Government argues that it could not disclose the complained of testimony until after Filer's expert witnesses testified, and as a result Filer suffered no prejudice. A review of the relevant timeline is necessary.

During the pre-trial conference on May 27, 2021, the Government explained that it intended to contest the enforceability of BWC Capital's lien on the grounds that after Harris Bank sold Barsanti Woodwork's debt to BWC Capital, "Kelly could then control a lien on his own company." (5/27/21 Hearing Tr. 18:7–12, Dkt. No. 144.) The Government further explained its view that because Barsanti Woodwork funds were used for the purchase price, "then the lien would have been released because it has been paid off." (*Id.* 19:5–8.) The Government's previously filed expert disclosure, which only included Professor Markell, did not disclose any opinions relating to this theory. Filer's previously filed expert disclosures included just one opinion touching on this topic. William Factor, who Filer intended to offer as an

expert regarding bankruptcy and commercial law, intended to opine that the enforceability of a lien is a legal question with gray areas. In response to Filer's disclosures, the Government noticed Markell as a rebuttal expert generally and stated that Markell's rebuttal testimony would be based on the actual testimony given by Filer's expert witnesses at trial.

During its case-in-chief, the Government presented little evidence directly addressing the validity of the lien or in support of the theories introduced during the pre-trial conference. For example, James Sullivan, Harris Bank's attorney in the Barsanti Woodwork debt transaction, testified that it was known to all involved that the purchase price for the transaction would be paid using Barsanti Woodwork's accounts payable. No witness, including Professor Markell, offered testimony supporting the Government's theory that this impacted the validity of the lien.

The Government rested its case-in-chief on June 24, 2021. In a letter dated that same day, the Government identified four expert opinions that it expected Markell to rebut, including Bivona Opinion 2, regarding use of a friendly creditor and three Factor opinions, including that the enforceability of a lien is a question of law. The Government noted that the scope of Markell's rebuttal is subject to change based on the actual testimony provided. The morning after the Government rested, the Court partially granted

Filer's Motion for Judgement of Acquittal and entered a judgment of acquittal as to all the bankruptcy-related counts. As a result, Filer did not call Factor as a witness.

Bivona testified on June 25, 2021. Filer rested his case-in-chief on June 29, 2021. That same day, the Government provided a more detailed disclosure regarding the substance of Markell's rebuttal testimony. Over Filer's objection the Court allowed Markell to testify on theories of agency and equitable ownership. Each of these theories bear on whether BWC Capital could hold a valid lien on Barsanti Woodwork's assets.

The Government does not dispute that it disclosed Markell's opinions related to agency and equitable ownership for the first time the day before his rebuttal testimony. They instead argue that this disclosure was consistent with their prior communications with Filer regarding when such disclosures would take place. The Second Circuit's Opinion in *United States v. Tin Yat Chen,* 476 F.3d 144 (2d Cir. 2007) is instructive here. In *Tin Yat Chen,* the Government called a handwriting expert to rebut the Defendant's handwriting expert. *Id.* at 146. Despite knowing that the authenticity of the defendant's signature would be a contested issue, the Government failed to disclose that it had retained such an expert or disclose any of his opinions until the end of the Defendant's case-in-chief. *Id.* On appeal, the Second Circuit

characterized the Government's conduct as "a sharp practice, unworthy of a representative of the United States." *Id.* While Rule 16 only requires pre-trial disclosure of experts to be called during the case-in-chief, the Government does not have "carte blanche in every case to spring a surprise expert witness on an unsuspecting defendant who has long since disclosed his own expert's prospective testimony." *Id.*

Here, while Filer knew the identity of the Government's rebuttal witness prior to trial, the substance of Markell's rebuttal opinions was unknown until the eve his testimony. Like the Government in *Tin Yat Chen,* the Government knew that the validity of the BWC Capital lien would be a contested issue at trial. Indeed, prior to trial the Government explained its theory of Filer's guilt was premised on its view that BWC Capital did not hold a valid lien on Barsanti Woodwork's assets. Even so, at no point during its case-in-chief did the Government or Professor Markell offer testimony or evidence generally addressing this issue or specifically addressing Markell's opinions regarding agency and equitable ownership. Instead, the Government waited to introduce these new theories until its rebuttal case.

As a result of the timing of the Government's disclosure of Markell's opinions on agency and equitable ownership, Filer's counsel had less than twenty-four hours to prepare a cross-

- 14 -

examination. This is insufficient time to develop a strategy to cross-examine both the substance of the new opinions, as well as the expert's professional credentials supporting the basis of these new opinions. *Id.* ("[N]o defense counsel, no matter how experienced, can fairly be asked to cross-examine on a moment's notice a witness who comes clothed with all the impressive credentials and specialized training of an expert and whose opinions and methods with respect to the case at hand have been subject to no prior scrutiny.")

In *Tin Yat Chen,* the Second Circuit concluded that the Government's conduct did not violate due process because the defense attorneys were afforded a one-day continuance to prepare. *Id.* The court concluded that one day was sufficient because counsel had "sufficiently immersed himself in the technicalities of handwriting analysis" while preparing his own witness. *Id.* Neither of these circumstances were present in this case. Filer's counsel was not given a continuance to prepare for Markell's testimony. Moreover, because these theories were being explored for the first time, Filer's counsel had not had the opportunity to immerse themselves in the technicalities of agency and equitable ownership principles. Filer's attorneys therefore did not have a fair opportunity to cross examine Markell on aspects of his rebuttal testimony. The Court finds that there is a reasonable probability

that allowing this testimony without sufficient cross prejudiced the jury. On these grounds, Filer is entitled to a new trial.

### 2. *The Substance of Markell's Testimony*

The Court also considers whether the substance of Markell's testimony provides an independent basis for a new trial. Filer identifies six opinions offered by Markell that he argues were improper and prejudicial. A common thread through the first four opinions is that each provides a basis to conclude that BWC Capital did not hold a valid lien on Barsanti Woodwork's assets. The Court concludes, as it did when granting Filer's Motion for Acquittal, that the first four opinions were ultimately questions of law to be determined by the Court and not to be presented to the jury. *See, e.g., United States v. Finley,* 708 F.Supp. 906, 913 (N.D. Ill. 1989).

Markell's opinions drew on his interpretation of the relationship between BWC Capital/Gereg and Barsanti Woodwork/Kelly. Specifically, Markell evaluated Gereg's executed retainer agreement and the unexecuted K Family Trust Assignment documents. But the "interpretation or legal effect of a contract is a question of law to be determined by the court." *Cromeens, Holloman, Sibert, Inc v. AB Volvo,* 349 F.3d 376, 394 (7th Cir. 2003). So too is the question "[w]hether an action or a judgment creates a valid and enforceable lien on property." *In re Kitzinger,*

- 16 -

1999 WL 977076, at *1 (N.D. Ill. Oct. 22, 1999). As the Court concluded in its September 21, 2021 Opinion granting Filer's Motion for Judgment of Acquittal, as a matter of law BWC Capital held a valid lien on Barsanti Woodwork's assets. *United States v. Filer,* 2021 WL 4318087, at *6 (N.D. Ill. 2021) (Leinenweber, J.).

The Court should have resolved the issues related to the legal operation of the relevant contracts and whether BWC Capital held a valid lien on Barsanti Woodwork's assets through pretrial motion practice and prior to the presentation of evidence to the jury. *United States v. Shortt Acct. Corp.,* 785 F.2d 1448, 1452 (9th Cir. 1986). The Court therefore erred by admitting Markell's rebuttal testimony on these issues. Whether Filer is entitled to a new trial a result of this error, however, depends on whether it was harmless.

The test for harmless error is "whether, in the mind of the average juror, the prosecution's case would have been significantly less persuasive had the improper evidence been excluded." *United States v. Vorley,* 2021 WL 1057903, at *27 (N.D. Ill. Mar. 18, 2021) (quoting *United States v. Stewart,* 902 F.3d 664, 683 (7th Cir. 2018). The Government's case relied heavily on the jury concluding that BWC Capital did not hold a valid lien. As a result of Markell's testimony regarding the lien, the jury was improperly given a basis for drawing this conclusion. It is

therefore undeniable that without this testimony the Government's cause would have been less persuasive and the prejudice it introduced is significant enough to warrant a new trial.

### B.  Weight of the Evidence

Filer's second argument is that the Government presented insufficient evidence for a rational jury to find beyond a reasonable doubt that Filer knowingly engaged in a scheme to defraud. Specifically, Filer argues that the Government failed to present evidence of motive, sufficient evidence of intent, and credible testimony that Filer committed a wrongful act. After review of the record, the Court cannot conclude that these grounds constitute a basis for a new trial.

As to the first argument, the Government was not required to present evidence of motive. This is due to the fact that motive is not an element of wire fraud. *United States v. Fard,* 775 F.3d 939, 944 (7th Cir. 2015) ("A wire fraud conviction under 18 U.S.C. § 1343 requires (1) a scheme to defraud; (2) intent to defraud; and (3) use of wires in furtherance of the scheme."). Consequently, while the jury was able to consider evidence of motive, or lack thereof, failure to present sufficient evidence on this issue is not grounds for a new trial.

The Court considers Filer's second and third arguments together. Filer's second argument is that the evidence and

testimony presented at trial do not support a conclusion that Filer acted with the requisite intent to defraud. Filer's third argument is that the Government failed to introduce credible evidence that Filer knowingly engaged in any wrongdoing. In support of these arguments, Filer contends that the testimony given by a number of Government witnesses lacked credibility and was subject to impeachment. Filer also argues that the evidence clearly showed that Filer did not conceal any information related to his representation of Kelly and Barsanti Woodwork, conduct inconsistent with fraud. Assessing the credibility of witnesses, resolving evidentiary conflicts, and drawing reasonable inferences are all matters reserved for the jury. *United States v. Hagan,* 913 F.2d 1278, 1281 (7th Cir. 1990) (quotation omitted). Given the totality of evidence introduced at trial, Filer has not demonstrated that the jury could not have reached a guilty verdict, only that in his view the jury should have reached a different conclusion. Consequently, these arguments cannot serve as a basis for a new trial.

### C. Confusing and Misleading Evidence

Finally, Filer argues that the Government's trial strategy resulted in the presentation of confusing and misleading evidence which prejudiced the jury. First, Filer points to the Government's shifting theories on why BWC Capital did not hold a valid lien on

Barsanti Woodwork's assets. In its discussion of the timing of Markell's rebuttal testimony, Section III.A.1, *supra,* the Court concluded that the Government's shifting position resulted in last minute expert disclosures which caused Filer prejudice. The same result is warranted here. The Court is compelled to conclude that Filer's inability to adequately cross examine Markell on his theories of agency and equitable ownership led to the presentation of evidence that could have misled the jury. For the same reasons articulated in Section III.A.1, *supra,* the Court finds this to be grounds for a new trial.

Second, Filer argues that the Government's evidence and closing argument statements related to Filer's misrepresentations to Harris Bank created a substantial risk of jury confusion. Prior to closing arguments, the Court explained that lack of candor cannot form the basis of a criminal wire fraud but did not forbid the Government from making any reference to its theory that Filer made misrepresentations to Harris Bank while negotiating BWC Capital's purchase of Barsanti Woodwork's debt. The Court therefore sees no basis for a new trial simply because the parties introduced competing theories on the intent behind Filer's representations to Harris Bank.

Filer's final argument compiles trial testimony and introduced evidence that he identifies as prejudicial and

misleading. For each item Filer objects to he was able to cross examine witnesses about their testimony or the challenged documentary evidence. These arguments therefore once again challenge the jury's authority to assess the credibility of witnesses and resolve evidentiary conflicts. *Hagan,* 913 F.2d 1278 at 1281. Here, the Court finds no basis to usurp the jury's authority. This evidence is therefore not a sufficient basis for a new trial.

## IV. **CONCLUSION**

For the reasons stated herein, the Court vacates its prior ruling denying Filer's Motion for New Trial as moot. For the reasons stated herein, Filer's Motion for a New Trial (Dkt. No. 179) is granted.

**IT IS SO ORDERED.**


_____
    Harry D. Leinenweber, Judge
    United States District Court

Dated: 12/14/2021

- 21 -