UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

EDWARD LEE FILER

No. 19 CR 565-1

Judge Steven C. Seeger

## STIPULATIONS

## STIPULATION NO. 1

If called to testify at trial, a records custodian from Harris Bank would testify that the following government exhibits: **062/pp.** 3-28, **401**, and **402** are true and accurate copies of banking records made at or near the time of the events recorded by a person with knowledge or with information transmitted by a person with knowledge. The records custodian would testify that the records were kept in the ordinary course of a regular business activity, and it was the regular practice of that business activity to make the records.

So Stipulated.

## STIPULATION NO. 2

If called to testify at trial, a records custodian from JPMorgan Chase Bank, N.A., would testify that the following government exhibits: **701, 702, and 704** are true and accurate copies of banking records made at or near the time of the events recorded by a person with knowledge or with information transmitted by a person with knowledge. The bank representative would testify that the records were kept in the ordinary course of a regular business activity, and it was the regular practice of that business activity to make the records.

So Stipulated.

<u>STIPULATION NO. 3</u>

If called to testify at trial, a records custodian from TBK Bank would testify that TBK Bank is the successor to the National Bank and that the following government exhibits: **706, 707, 708, and 709** are true and accurate copies of banking records made at or near the time of the events recorded by a person with knowledge or with information transmitted by a person with knowledge. The bank representative would testify that the records were kept in the ordinary course of a regular business activity, and it was the regular practice of that business activity to make the records.

So Stipulated.

## STIPULATION NO. 4

If called to testify at trial, a representative for godaddy.com, LLC, would testify that the domain barsantiwoodwork.com was created on May 15, 2000 and email address pkelly@barsantiwoodwork.com was created on March 18, 2009. In addition, the witness would further testify that its servers were located in the state of Arizona in 2013.

If called to testify at trial, a representative of Smith, Gambrell, Russell Law firm would testify that it is the successor to Freeborn & Peters and that Freeborn & Peters' email exchange servers were located at the firm's office in Chicago, Illinois, for the duration of 2013.

Government Exhibit **178** is an email sent on August 21, 2013 whereby Paul Kelly sent an email from pkelly@barsantiwoodwork.com to Robert Gereg, Edward Filer, Ashley Brandt, and Samuel Lichtenfeld. Filer, Brandt, and Lichtenfeld's email was hosted by the servers at Freeborn & Peters. Kelly's email was sent from pkelly@barsantiwoodwork.com. This email was a wire communication transmitted in interstate commerce.

So Stipulated.

# STIPULATION NO. 5

If called to testify at trial, a representative for Web.com, would testify that web.com is a company that provides domain name registration and web development services. The representative would further testify that the domain cragroup.us and the email address rgereg@cragroup.us was created on May 12, 2004. In addition, the representative would testify that web.com's email servers were located in the state of Florida and the state of Georgia for the duration of 2013.

If called to testify at trial, a representative of Smith, Gambrell, Russell Law firm would testify that it is the successor to Freeborn & Peters and that Freeborn & Peters' email exchange servers were located at the firm's office in Chicago, Illinois, for the duration of 2013.

Government Exhibit **182** is an email sent on August 22, 2013 by Robert Gereg, using the email address rgereg@cragroup.us, to Edward Filer, Ashley Brandt, and Samuel Lichtenfeld, who were each using an email address hosted by Freeborn & Peters. This email was a wire communication transmitted in interstate commerce.

So Stipulated.

## STIPULATION NO. 6

Due to technological processes of certain computer programs, the times and dates recited on some email exhibits are reported in Greenwich Mean Time ("GMT"), which, depending on whether Daylight Savings Time is in effect, is five or six hours ahead of Central Standard Time ("CST"). As a result, the banner on an email that was actually sent at 10:30 PM CST on January 1st, might indicate that it was sent at 4:30 AM on January 2nd, due to the six-hour time difference. Because the email banners often report a time without specifying whether it is GMT or CST, it is possible that an email response might appear to have been sent before the email to which it responds. To aid in determining the chronology of emails, where relevant, email threads have been used.

So Stipulated.

## STIPULATION NO. 7

**Filer Exhibit 138** is a true and accurate copy of Freeborn & Peter's client ledger for Barsanti Woodwork. This record was made from information transmitted by a person with knowledge. The record was kept in the course of Freeborn's regularly conducted business activity, and it was the regular practice of Freeborn to make this record. If called to testify, a representative from Freeborn would testify that this client ledger reflects the amount of each bill Freeborn sent to Barsanti Woodwork and the dates Barsanti Woodwork made full or partial payments to Freeborn for its legal services. The Freeborn representative would further testify that this client ledger reflects that Freeborn billed Barsanti Woodwork a total of $57,839 for its legal services between February 2013 and September 2014, but Barsanti Woodwork only paid Freeborn a total of $4,547 for the legal services.

So Stipulated.

# STIPULATION NO. 8

**Filer Exhibit 161** is a true and accurate copy of Freeborn & Peters origination reports for Ed Filer between 2012 and 2014. These reports were made from information transmitted by a person with knowledge. The records were kept in the course of the Freeborn's regularly conducted business activity, and it was the regular practice of Freeborn to make these records. If called to testify, a representative from Freeborn would testify that the firm prepares annual origination reports for each attorney employed by the firm. For each client the attorney was responsible for bringing into the firm, the origination reports' fee receipts line reflects the total amount of fees that the client paid to Freeborn. Ed Filer's origination reports reflect that the firm's work on behalf of clients he brought into the firm generated a total of $2.4 million for Freeborn in 2012, $2.1 million in 2013, and $2.3 million in 2014.

So Stipulated.

## STIPULATION NO. 9

**Filer Exhibit 156** is a true and accurate copy of Freeborn & Peters' attorney billing records for the Barsanti Woodwork matters. These reports were made from information transmitted by a person with knowledge. The records were kept in the course of the Freeborn's regularly conducted business activity, and it was the regular practice of Freeborn to make these records. If called to testify, a representative from Freeborn would testify that these records show the amount of time Freeborn attorneys reported that they spent working on the Barsanti Woodwork matters, the tasks that they performed, and the dates they performed the tasks. The Barsanti Woodwork billing records often refer to the working attorneys and paralegals by their initials. AWB refers to Ashley Brandt. SAL refers to Sam Lichtenfeld. TRF refers to Thomas Fawkes. ELF refers to Ed Filer. CF refers to paralegal Cathy Franczyk.

So Stipulated.

# STIPULATION NO. 10

**Filer Exhibit 177** is a true and accurate copy of a record generated by Freeborn & Peters. **Filer Exhibit 177** was generated from records that were kept in the course of the Freeborn's regularly conducted business activity, and it was the regular practice of Freeborn to make these records. These reports were made from information transmitted by a person with knowledge. If called to testify, a representative from Freeborn would testify that **Filer Exhibit 177** shows the total number of hours and the total number of billable hours that Ed Filer recorded in Freeborn's time-keeping systems for the years 2011 through 2016.

So Stipulated.

# STIPULATION NO. 11

**Filer Exhibits 157, 158, 159, and 160** are true and accurate copies of Freeborn & Peters metadata for certain documents that were prepared by attorneys as part of their work on the Barsanti Woodwork matter. The document associated with the metadata appears in the exhibit behind the metadata. These reports were made from information transmitted by a person with knowledge. The records were kept in the course of the Freeborn's regularly conducted business activity, and it was the regular practice of Freeborn to make these records. If called to testify, an information technology specialist at Freeborn would testify that the metadata shows which Freeborn attorneys opened the document associated with the metadata, when they opened the document, and how long they had the document opened. It also shows whether the attorney printed the document. **Filer Exhibit 157** shows the metadata for the Confession of Judgment Complaint and Robert Gereg's supporting affidavit. **Filer Exhibit 158** shows the metadata for both Change in Terms Agreements. **Filer Exhibit 159** shows the metadata for the draft Millwork Membership Transfer Agreement. **Filer Exhibit 160** shows the metadata for the draft BWC Capital Membership Transfer Agreement.

So Stipulated.

## STIPULATION NO. 12

**Filer Exhibit 121** is a true and accurate copy of records from the building where Freeborn & Peters' offices are located, namely 311 South Wacker in Chicago. The records show that Paul Kelly arrived at Freeborn & Peters offices on October 8, 2013 at 12:30 pm for his preparation session in advance of the 341 meeting of the creditors. Mr. Kelly and Mr. Fawkes left the building shortly before 2:00 pm that day to travel to 219 South Dearborn, in Chicago, for the 341 meeting of the creditors, which began at 2:00 pm. The building records further show that on October 8, 2013, Ed Filer entered Freeborn & Peters' offices for the first time that day shortly after 2:00 pm.

So Stipulated.

## STIPULATION NO. 13

**Filer Exhibit 162** is a true and accurate copy of various documents in which Robert Gereg is either listed as the sole member of Barsanti Millwork LLC or signs on behalf of Barsanti Millwork.

So Stipulated.

## STIPULATION NO. 14

**Filer Exhibit 163** is a true and accurate copy of various documents in which Robert Gereg is either listed as the sole member of BWC Capital or signs on behalf of BWC Capital.

So Stipulated.

## STIPULATION NO. 15

If called to testify, Pamela Wicker would testify that in 2012 and 2013, she was employed in Harris Bank's Special Assets/Workout Group. She would further testify that on October 31, 2012, Harris Bank, through its counsel, sent Paul Kelly a letter in connection with the loans Harris Bank had issues to Barsanti Woodwork. The letter informed Mr. Kelly that Barsanti Woodwork's second loan forbearance period had expired and that Harris Bank demanded payment of the full principal balance of the loans, plus interest, late charges, and unpaid fees, by November 15, 2012.

So Stipulated.

## STIPULATION NO. 16

**Filer Exhibit 47** is a true and accurate copy of a Deal Decision document for Harris Bank, which sets forth reasons Harris Bank decided to sell its Barsanti Woodwork loans for $575,000. The record was kept in the course of Harris Bank's regularly conducted business activity, and it was the regular practice of Harris Bank to make these records.

So Stipulated.

## STIPULATION NO. 17

**Filer Exhibit 17** is a true and accurate copy of a High Risk/Impaired Asset Report that was prepared by Harris Bank. The record was kept in the course of Harris Bank's regularly conducted business activity, and it was the regular practice of Harris Bank to make these records. If called to testify, a representative from Harris Bank would testify that this report was prepared in December 2012 and related to Harris Bank's loans to Barsanti Woodwork. The document described the type and amount of the loans, the purpose of the loans, and the status of loan repayment, including that Barsanti Woodwork had defaulted on the loans.

So Stipulated.

## STIPULATION NO. 18

**Filer Exhibit 52** is a true and accurate copy of a High Risk/Impaired Asset Report that was prepared by Harris Bank. The record was kept in the course of Harris Bank's regularly conducted business activity, and it was the regular practice of Harris Bank to make these records. If called to testify, a representative from Harris Bank would testify that this report was prepared in March 2013 and related to Harris Bank's loans to Barsanti Woodwork. The document described the type and amount of the loans, the purpose of the loans, and the status of loan repayment, including that Barsanti Woodwork had defaulted on the loans.

So Stipulated.

## STIPULATION NO. 19

On April 9, 2014, Freeborn and Peters produced 3,386 pages to the trustee in response to his subpoena dated March 19, 2014. The documents contained **in Filer Exhibit 165** and **Filer Exhibit 166** were included in that production.

So Stipulated.

# STIPULATION NO. 20

If called to testify, Jillian Vessey would testify that she is an experienced forensic latent print analyst and was asked by Postal Inspector Ben Weller to analyze fingerprints on two letters. The letters that Ms. Vessey analyzed for fingerprints and the fingerprints she identified are reflected in **Filer Exhibit 143**. As a result of her analysis, she found 22 identifiable fingerprints on the letters and three partial fingerprints that were not suitable for comparison. Twenty of the identifiable fingerprints belonged to an individual named Brian Welch. Mr. Welch's fingerprints are marked on the letters as L1, L2, L4, L6, L9 through L18, and L20 through L25. Fingerprints identifiable as Ed Filer's were not found on either letter. Fingerprints identifiable as Carol Ryan's or Ashley Brandt's also were not found on either letter. The other two identifiable fingerprints belong to an unidentified individual, who was neither Mr. Filer, Ms. Ryan, Mr. Brandt nor Mr. Welch. The two fingerprints belonging to an unidentified individual are marked L7 and L8 and appear next to each other on the back of one of the two letters. The three partial prints that were not suitable for comparison are marked on the letters as L3, L5, and L19. The absence of an individual's fingerprints on an object does not necessarily mean that the individual did not touch or hold the object in question. There are a number of reasons why someone might not leave any fingerprints, or only leave partial fingerprints unsuitable for comparison, on an object despite having held or touched an object. For example, a person's fingers must be relatively dry in order to leave a suitable fingerprint. If a person's fingers are somewhat oily or sweaty, an individual might not leave a print. And, if the item is manipulated or folded, or something is rubbed against it, a print that was left might be smudged or erased. And the condition of the surface being touched and atmospheric conditions of the room, such as humidity, also affect whether a person leaves a fingerprint.

So Stipulated.

Stipulations Nos. 1-20 above are agreed to by:


TIMOTHY M. O'SHEA
United States Attorney
Western District of Wisconsin

*/s/ Jeffrey S. Snell*
JEFFREY S. SNELL
KRISTIN PINKSTON
Assistant United States Attorneys
BRIAN P. NETOLS
Special Assistant United States
Attorney
219 South Dearborn St., 5th Floor
Chicago, Illinois 60604
(312) 469-6308

EDWARD L. FILER


/s/ Eli J. Litoff
Ronald S. Safer
Robert H. Riley
Eli J. Litoff
Mary A. Laird
RILEY SAFER HOLMES & CANCILA
LLP
70 W. Madison St., Suite 2900
Chicago, Illinois 60602
(312) 471-8700 (Telephone)
(312) 471-8701 (Facsimile)

*Attorneys for Defendant Edward Filer*