UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EDWARD LEE FILER | Case No.: 19 CR 565-1<br><br>Hon. Steven C. Seeger |

**DEFENDANT EDWARD FILER'S MOTION FOR RECONSIDERATION
REGARDING MOTION *IN LIMINE* NO. 3
TO BAR TESTIMONY OF JUDGE SHERLOCK**

Defendant Edward Filer, through his undersigned counsel, respectfully requests that the Court reconsider its denial of Mr. Filer's Motion *in Limine* No. 3, which sought to bar the testimony of Judge Patrick J. Sherlock. In support of this motion, Mr. Filer states as follows.

**INTRODUCTION**

Mr. Filer moved to bar the testimony of Judge Patrick J. Sherlock, who currently presides in the Cook County Law Division. Dkt. 282, 318. This Court granted that motion in part and denied it in part. Dkt. 420, at 6–7. The Court ruled that Judge Sherlock "cannot testify about the law itself." *Id.* at 7. But the Court also ruled that Judge Sherlock could testify as follows:

> Judge Sherlock can testify about what information he considered important in the state court case. He can testify about whether the confession-of-judgment clauses in the Change in Terms Agreements were important to him before he made his rulings and issued his orders. Judge Sherlock can testify about the affidavit, too.
>
> More broadly, Judge Sherlock can testify about his pattern and practice of relying on material submitted by the parties before issuing his rulings. Habit evidence is admissible. *See* Fed. R. Evid. 406.

*Id.* Mr. Filer respectfully asks the Court to reconsider this ruling.

Although the Court is correct that "there is nothing *per se* wrong with a judge testifying," *id.*, there **is** a *per se* ban on judges testifying about their deliberative processes. The testimony that the Court has preliminarily allowed is exactly that: testimony about the information Judge Sherlock typically considers and how it impacts his ***judicial decisions***. Defense counsel has not found a single case, and the government has cited none, in which a court allowed a judge to testify about the information they consider in rendering judicial opinions. This Court should not be the first.

Separately, Rule 403 provides an independent basis for excluding Judge Sherlock's testimony. The unfair prejudice Mr. Filer would suffer if Judge Sherlock is allowed to testify cannot be overstated. The power of a sitting judge testifying in a criminal case against a lawyer who is charged with defrauding that very court is immense, and will irreparably taint the jury. The undisputed truth is that Judge Sherlock remembers nothing about the case. His speculative testimony about what he might have considered relevant in a case as to which he recalls nothing has little probative force but enormous impact because of his status.

## **LEGAL STANDARD**

"Trial courts issue rulings on motions *in limine* to guide the parties on what evidence it will admit later in trial. As a trial progresses, the presiding judge remains free to alter earlier rulings." Dkt. 420, at 1 (quoting *Perry v. City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013)). "Regardless of the Court's initial ruling on a motion *in limine*, the Court may adjust its ruling during the course of trial." *Id.* (citing *Farfaras v. Citizens Bank & Tr. of Chicago*, 433 F.3d 558, 565 (7th Cir. 2006)).

**ARGUMENT**

I. **The Proffered "Habit" Testimony is *Per Se* Barred by the Deliberate Process Privilege.**

This dispute is not about whether Judge Sherlock can testify as a fact witness. The dispute is only about whether the proffered "habit" testimony—the only testimony Judge Sherlock is capable of offering—improperly infringes on the judicial deliberative process. As explained below, it plainly does.

It is black-letter law that "[i]nquiry beneath the surface of a judge's opinion is forbidden." *Matter of Cook*, 49 F.3d 263, 265–66 (7th Cir. 1995); *Fayerweather v. Ritch*, 195 U.S. 276, 307 (1904) ("A judgment is a solemn record. Parties have a right to rely upon it. It should not lightly be disturbed, and ought never to be overthrown or limited by the oral testimony of a judge or juror of what he had in mind at the time of the decision."). The "judicial deliberative process privilege" prohibits inquiry into a judge's "reasoning, motivations, or ***thought processes*** in performing judicial functions or in coming to a final judgment." *Mendez v. City of Chicago,* No. 18 CV 5560, 2020 WL 1304741, at *2 (N.D. Ill. Mar. 19, 2020) (emphasis added). This privilege has been "universally recognized" and is "well-entrenched in both federal and state law." *Id.* at *2 n.1.

Accordingly, "the testimony of the judge who presided over [another proceeding] is ***not admissible … to show … what the result would have been under different evidence***." *Georgou v. Fritzshall*, No. 93 C 997, 1995 WL 248002, at *4 (N.D. Ill. Apr. 26, 1995) (emphasis added). Yet that is precisely what the government is attempting to do here. Judge Sherlock's testimony is being offered to show "the importance of the false statements." Dkt. 420, at 7. In other words, the government seeks admit "the testimony of the judge who presided over the" confession of judgment action to show that "the result would have been different" had he not been misled. *Georgou*, 1995 WL 248002, at *4. This is plainly improper.

3

Characterizing the testimony as "habit" or "pattern and practice" does nothing to obviate the well-established rule against inquiring into a judge's deliberative process. While habit evidence is typically admissible, ***this particular habit evidence*** is not, because it is about what the judge considers or deems important in rendering judicial decisions. If the government was seeking to question Judge Sherlock about habits involving facts—non-substantive procedures that must be followed in his courtroom—those lines of inquiry would be permissible. But here, the habit evidence ***is*** Judge Sherlock's deliberative process.

As set forth in Mr. Filer's prior briefing, courts in this district and across the country have uniformly forbidden the precise "pattern and practice" and "habit" testimony the government seeks to elicit here. The government, by contrast, does not cite a ***single case*** where such testimony has been allowed. *See, e.g., Mendez*, 2020 WL 1304741, at *2 (barring testimony from a judge about his "customary practices," including "what he generally requires in an affiant officer's complaint for search warrant" and rejecting the plaintiff's framing of those questions as "purely factual lines of inquiry" because the "proposed questions are highly likely to invade into Judge Burns's decision-making process and therefore target privileged material."); *Georgou*, 1995 WL 248002, at *4; *Auguste v. Sullivan,* 2009 WL 790135, at *1 (D. Colo. Mar. 20, 2009) (where plaintiff sought to elicit general testimony from a judge about his process for issuing search warrants and reviewing affidavits, including whether it was his practice to issue search warrants on affidavits that do not contain evidence of recent illegal activity, the court barred the proffered testimony and cautioned that "[a]lthough plaintiff characterizes questions about these topics as factual ones that do not implicate Judge Hiatt's mental processes, such questions are so directly tied to, and so strongly infer, the mental processes that Judge Hiatt used in authorizing the warrant as to be impermissible."); *see also Watkins v. City of New York*, No. 14-CV-0887 JMF, 2015 WL 4865139,

4

at *3 (S.D.N.Y. Aug. 13, 2015) ("to the extent that the City seeks information about why Justice Donnino signed the arrest warrant, that line of questioning would intrude on Justice Donnino's thought processes, and is therefore impermissible."); *United States v. Roth,* 332 F. Supp. 2d 565, 570 (S.D.N.Y. 2004), aff'd sub nom. *United States v. St. John*, 267 F. App'x 17 (2d Cir. 2008) (barring a judge from testifying about his mental processes in accepting a defendant's plea deal and distinguishing between "factual knowledge" of the defendant's case, which was already part of the record, and "the only 'knowledge' in connection with this case that is possessed by Judge Rosenwasser, which is not available through other sources … his mental process.").

In its prior briefing, *see* Dkt. 308, the only case cited by the government was *United States v. Frankenthal*, in which the Seventh Circuit affirmed a decision allowing a judge to recount the contents of his *ex parte* conversation with a defense witness, of which no other individual had knowledge. 582 F.2d 1102 (7th Cir. 1978). In doing so, the Seventh Circuit noted the severe risk of prejudice and emphasized that the trial court had appropriately instructed the jury that the judge's testimony "could only be considered in assessing [the defense witness's] credibility and that in no way constituted evidence against the accused." *Id.* at 1108. Ultimately, the court held that allowing the testimony was not an abuse of discretion because the judge "possessed ***factual knowledge*** that was highly pertinent to the jury's task, and he was the only possible source of testimony on that knowledge." *Id.* at 1108 (emphasis added).

*Frankenthal* confirms the clear line between appropriate factual testimony from a witness who happens to be a judge, and improper inquiry into a judge's deliberative process. If Judge Sherlock recalled a conversation with Mr. Filer or another witness, he could certainly provide that factual testimony. If he was needed to testify about the date his judgment issued or other similar facts, that would likely be permissible as well. But it is black-letter law that he cannot "testify

5

about what information ***he considered important*** in the state court case." Dkt. 420 at 7 (emphasis added). This testimony impermissibly invades the mental processes of a judge in rendering a judicial opinion. Mr. Filer respectfully asks this Court to reconsider its decision to the contrary.

### II. The Probative Value of Judge Sherlock's Testimony is Substantially Outweighed By the Danger of Unfair Prejudice.

Even if Judge Sherlock's testimony were not barred by the *per se* ban on judicial process testimony, it should be excluded under Rule 403.

Beginning with the probative value of the testimony, the Court reasoned that "[i]t's hard to tell the part of the story about deceiving the state court judge without hearing from the state court judge." Dkt. 420, at 7. But the record shows that the Government ***did*** tell this story without Judge Sherlock. He was ***not*** called to testify at the prior trial, and so his "habit" testimony can hardly be said to be probative, let alone essential. Indeed, the Government did not even interview Judge Sherlock until more than two years later (October of 2023), and he was not disclosed as a potential witness until two-and-a-half years after the first trial concluded (December of 2023). So telling the story without Judge Sherlock is entirely possible. In fact, the Government obtained a jury verdict against Mr. Filer without Judge Sherlock's testimony.

Moreover, while the recipient of a misrepresentation may typically be an important part of the story in a fraud case, that general principle has no application where, as here, the judge has no recollection at all about the case. Judge Sherlock was twice interviewed by the government. At the first interview, he stated that he "had no immediate recollection" of Mr. Filer or Barsanti Woodwork.[1] The government then interviewed Judge Sherlock a second time and attempted to refresh his recollection by showing him over 70 pages of filings from the confession of judgment

---

[1] Mr. Filer does not seek to disturb the confidentiality of federal agents and other individuals involved in the Government's investigation, and so relevant excerpts of the Government's interview memorandum are quoted herein, rather than attached as an exhibit.

action. After reviewing those voluminous materials in detail and discussing them with the prosecutor and agent, Judge Sherlock stated: "due to the passage of time and the number of cases over which he presided in the intervening time, reviewing the documents ***did not refresh [his] recollection*** of executing the Order of Judgment at the time he did so."

Judge Sherlock therefore is not capable of testifying "about what information he considered important in the state court case." Dkt. 420, at 7. He is not capable of testifying about "whether the confession-of-judgment clauses in the Change in Terms Agreements were important to him before he made his rulings." *Id.* He can only testify about what information he ***would have*** considered or what information ***would have*** been important to him, based on his "habit" or "pattern and practice of relying on material submitted by the parties before issuing his rulings." *Id.*

A jury can understand, intuitively, that judges consider the materials submitted to them by parties. They do not need a sitting judge to walk into the courtroom and say it. Judge Sherlock's testimony offers little that the jurors do not already know. Other witnesses will testify about the contents of the documents and the government will be permitted to argue their materiality in closing—just as it did when it tried Mr. Filer three years ago.

On the flipside, if Judge Sherlock is permitted to testify about what he ***would have*** considered relevant in a case he cannot recall, the risk of prejudice to Mr. Filer is extreme. As the Seventh Circuit has warned, "the possibility that prestige, dignity, and authority may … somehow [be] imparted to the prosecution's case by [a] judge's appearance on its behalf cannot lightly be dismissed." *Frankenthal*, 582 F.2d at 1108. There is substantial risk that the jury will "give too much credence to the testimony" of Judge Sherlock, a judge who presides just down the street from Mr. Filer's retrial. *Georgou*, 1995 WL 248002, at *4. His testimony "is likely to bear additional weight in the mind of jurors because of his position and authority, and because it

7

automatically bears the imprimatur of character, credibility and reliability emanating from the judge's position rather than the quality or veracity of his testimony." *Id.* at *4 (cleaned up).

Put simply, "[j]udicial testimony that supports the position of one of the parties confers the prestige and credibility of judicial office to that litigant's position"—a risk this Court should not sanction where Mr. Filer's liberty may hang in the balance. *Stryker Corp. v. XL Ins. Am.,* No. 1:17-CV-66, 2020 WL 13443036, at *1 (W.D. Mich. July 24, 2020). It is for this reason that courts within this district and nationwide warn that testimony by a judge about a case over which he presided is extremely prejudicial and should be excluded under Rule 403. *See, e.g., Georgou,* 1995 WL 248002; *Stryker Corp.,* 2020 WL 13443036; *Reliable Transportation Specialists, Inc. v. Wausau Underwriters Ins. Co.,* No. 15-12954, 2019 WL 1559462, at *2 (E.D. Mich. Apr. 10, 2019) (excluding opinion testimony of the judge who presided over the settlement conference at issue under Rule 403, noting that the "court agrees with those courts that have recognized the inherent prejudice in having a judge testify as an opinion witness regarding a case they presided over," particularly where the judge "does not accurately recall some of the details of the case and was not involved in many of the key events.").

## CONCLUSION

Mr. Filer appreciates this Court's reasoned decision on his Motion *in Limine* No. 3, but for the reasons stated herein, he respectfully asks the Court to reconsider. Judges may testify as fact witnesses in some circumstances, but they are not permitted to testify about what information they considered (or would have considered) important in cases over which they presided. Such testimony improperly invades the judicial deliberative process and must be barred wholesale.

Moreover, judicial testimony in support of one party confers the prestige and credibility of judicial office to that litigant's position—creating a danger of unfair prejudice that is unacceptable,

8

especially in a criminal case where the stakes could not be higher. Mr. Filer respectfully requests that the Court enter an Order barring the testimony of Judge Patrick J. Sherlock.

Dated: January 27, 2025            Respectfully submitted,

                                            */s/ Ronald S. Safer*
                                            Ronald S. Safer
                                            Robert H. Riley
                                            Eli J. Litoff
                                            Mary A. Laird
                                            RILEY SAFER HOLMES & CANCILA LLP
                                            1 S. Dearborn St., Suite 2200
                                            Chicago, Illinois 60603
                                            (312) 471-8700 (Telephone)
                                            (312) 471-8701 (Facsimile)
                                            rsafer@rshc-law.com
                                            rriley@rshc-law.com
                                            elitoff@rshc-law.com
                                            mlaird@rshc-law.com

                                            *Attorneys for Defendant Edward Filer*