**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 19-cr-565 |
| | ) | |
| EDWARD LEE FILER | ) | Hon. Steven C. Seeger |
| _____ | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Defendant Edward Filer is headed to trial for a second time on two counts of wire fraud. He now seeks to limit the evidence in the second trial based on acquittals on other charges in the first trial.

An indictment charged Filer with multiple counts of wire fraud, bankruptcy fraud, and perjury. The case went to trial, and Filer moved for an acquittal. Before the jury received the case, the presiding district court judge acquitted Filer on all counts, except two counts of wire fraud.

The jury later returned a guilty verdict on the two counts of wire fraud. And then, the district court granted Filer's motion for an acquittal on those two counts. When it was all said and done, the district court acquitted Filer on every count.

The government appealed the acquittal on the two counts of wire fraud, and the Seventh Circuit reversed and remanded for a new trial. So, Filer went to trial once, and he is now going to trial again. The second trial will be limited to the two wire-fraud counts.

In the motion *in limine* at hand, Filer seeks to limit the evidence in the second trial, based on what happened in the first trial. In particular, Filer asks to exclude any evidence or argument about the bankruptcy proceedings of Barsanti Woodwork, a company formerly owned by his client, Paul Kelly.

In a nutshell, Filer believes that any references to the bankruptcy should be out of bounds at the second trial because the district judge at the first trial acquitted him of bankruptcy fraud. Filer argues that the Double Jeopardy Clause and collateral estoppel prevent the government from mentioning the bankruptcy at the upcoming trial. In the alternative, Filer seeks to limit what the government can say about the bankruptcy under Rule 403. In response, the government represented that it wanted to present only discrete pieces of evidence about the bankruptcy.

For the following reasons, the motion *in limine* is granted in part and denied in part.

## Background

The case has a long procedural history, and this Court assumes that any interested reader knows the full backstory. *See generally United States v. Filer*, 56 F.4th 421 (7th Cir. 2022).

For now, the key point is that the case went to trial once, and is about to go to trial for a second time. The question at hand is how the judgments of acquittal in the first trial affect the scope of the evidence in the second trial. The answer requires a close, detailed look at what happened last time.

### *The Charges*

The government charged Filer with a scheme to defraud the unsecured creditors of Barsanti Woodwork, a debtor in bankruptcy. The scheme involved getting the company's assets out of the reach of the creditors through fraudulent means. Filer allegedly contributed to that scheme while representing Defendant Paul Kelly, his client. Kelly owned Barsanti Woodwork.

Barsanti Woodwork owed money to a bank, and the bank had a lien on the assets of the company. Filer helped Kelly get his hands on that lien. Kelly then used that lien to obtain the company's assets through a judgment in state court. The indictment alleged that Filer helped Kelly obtain that lien, and obtain the state court judgment, through fraud.

The fraud enabled Kelly to get control of the company's assets, at the expense of everyone else. When Barsanti Woodwork later filed for bankruptcy, there was nothing left for the creditors. The assets had left the proverbial building, and the other creditors were left out in the cold.

The operative indictment included twenty-one counts against the defendants, including fourteen counts against Filer (numbered from 1 to 11, and 13 to 15).[1] *See generally* Second Superseding Indictment (Dckt. No. 64). The charges against Filer included five counts of wire fraud (Counts 1, 2, 9, 10, and 13), eight counts of bankruptcy fraud (Counts 3, 4, 5, 6, 7, 8, 11, and 14), and one count of perjury (Count 15).

Before trial, the government moved to dismiss four of the charges: Counts 7, 9, 10, and 13. *See* Gov't's Mtn. to Dismiss, at 1 (Dckt. No. 145). Judge Leinenweber (this Court's predecessor, before reassignment) granted the motion, so three counts of wire fraud (Counts 9, 10, and 13) and one count of bankruptcy fraud (Count 7) left the case. *See* 6/9/21 Order (Dckt. No. 147).

---

[1] The indictment also charged Filer's codefendants, Paul Kelly and Robert Gereg. Count 12 was just against Gereg. And there were other counts in the indictment beyond Count 15, as well.

### *The Trial, and the Motion for Acquittal*

The case proceeded to trial. *See* 6/11/21 Order (Dckt. No. 148). At that point, the remaining charges included two counts of wire fraud (Counts 1 and 2), seven counts of bankruptcy fraud (Counts 3–6, 8, 11, and 14), and one count of perjury (Count 15).

At the close of the government's evidence, Filer moved for judgment of acquittal on all counts under Rule 29(a) of the Federal Rules of Criminal Procedure. *See generally* Mtn. for J. of Acquittal (Dckt. No. 159). A district court must grant a motion for acquittal if, after "viewing the evidence in the light most favorable to the prosecution, the record contains no evidence on which a rational jury could have returned a jury verdict." *United States v. Murphy*, 406 F.3d 857, 861 (7th Cir. 2005).

On June 25, 2021, Judge Leinenweber delivered an oral ruling, granting in part and denying in part the motion for judgment of acquittal. *See* Trial Tr. Vol. 10-A, at 1824 (Dckt. No. 212). He acquitted Filer on six of the seven then-remaining counts of bankruptcy fraud (Counts 3–6, 11, and 14), and on the count for perjury (Count 15).

Judge Leinenweber denied the motion for acquittal on the two wire-fraud counts (Counts 1–2), and on one of the bankruptcy-fraud counts (Count 8). *Id.* at 1836.

The basis for that ruling is the crux of the motion at hand, meaning the motion to exclude evidence based on the Double Jeopardy Clause. So, this Court will do a deep dive and offer a detailed summary of Judge Leinenweber's oral ruling.

### *The Oral Ruling on the Motion for Acquittal – Wire Fraud*

Judge Leinenweber denied the motion for judgment of acquittal on the two counts of wire fraud (Counts 1 and 2).

Counts 1 and 2 alleged wire fraud "based on various acts undertaken by Filer, Kelly, and Gereg in an alleged scheme to shield Barsanti Woodwork's assets from certain unsecured creditors by enforcing BWC Capital's lien on the company's assets." *Id.* at 1824–25. Counts 1 and 2 alleged violations under 18 U.S.C. § 1343. *See* Second Superseding Indictment, at 27–28 (Dckt. No. 64).

Filer argued that he was entitled to judgment of acquittal on the wire-fraud counts because "no reasonable jury could find a scheme to defraud where BWC Capital held a valid lien and it was entitled to exercise its rights under that lien." *See* Trial Tr. Vol. 10-A, at 1825–26 (Dckt. No. 212). Filer also argued that "defrauding Barsanti Woodwork's creditors was impossible." *Id.*

Judge Leinenweber rejected both arguments.

3

On the first argument, Judge Leinenweber pointed out that it was an open question "whether the lien was extinguished when Harris Bank transferred the debt to BWC Capital." *Id.* at 1825.

As Judge Leinenweber explained: "It remains an open question of fact whether Kelly controlled BWC Capital such that when he stepped into Harris Bank's shoes, Kelly acquired his own lien. If Kelly, in fact, acquired his own lien, the lien would have been extinguished. Because Counts 1 and 2 allege fraud during the course of BWC Capital's enforcement of its lien, the jury's resolution of whether the lien was valid in the first place precludes the Court from granting Filer's motion for judgment of acquittal on this basis." *Id.* at 1826.

On the second argument, Judge Leinenweber ruled that defrauding Barsanti Woodwork's creditors was not impossible for a similar reason. If the jury determined that the lien had been extinguished, then the invalid lien could have improperly shielded assets from the judgment obtained by the union. *Id.* at 1826–27.

Judge Leinenweber added that it was an open question whether Filer caused material misrepresentations in the state court proceeding. *Id.* at 1827. Judge Leinenweber recognized that the government presented evidence of two misstatements: the backdated change-in-terms agreement, and the overstatement of the outstanding loan amount. *Id.* But the materiality of those misstatements would turn on whether the lien was valid, which was still an open question for the jury. *Id.*

So, Judge Leinenweber denied the motion for acquittal on the two counts of wire fraud (Counts 1 and 2).

### *The Oral Ruling on the Motion for Acquittal – Bankruptcy Fraud*

Judge Leinenweber granted in part and denied in part the motion for judgment of acquittal on the charges of bankruptcy fraud. Judge Leinenweber granted the motion for six of the seven then-remaining counts of bankruptcy fraud (Counts 3, 4, 5, 6, 8, 11, and 14).

The seven counts invoked two different statutes. Counts 3, 4, 6, 11, and 14 alleged violations of 42 U.S.C. § 157. *See* Second Superseding Indictment, at 28–30 (Dckt. No. 64). Counts 5 and 8 alleged violations of 42 U.S.C. § 152. *Id.* at 28–30, 33.

Judge Leinenweber began by granting the motion for judgment of acquittal on Counts 3 to 5.

Counts 3 to 5 alleged bankruptcy fraud based on Barsanti Woodwork's filings in the bankruptcy court. *See* Trial Tr. Vol. 10-A, at 1829 (Dckt. No. 212). Specifically, Count 3 alleged that "Filer caused Barsanti Woodwork to file Chapter 7 bankruptcy petitions." *Id.* at 1828. Count 4 alleged that Filer caused Barsanti Woodwork to "file a false statement of financial affairs." *Id.* Count 5 alleged that Filer caused Barsanti Woodwork to "represent that BWC Capital was a creditor." *Id.*

4

To prove bankruptcy fraud, the government needed to show "(1) that [Filer] engaged in a fraudulent scheme; (2) that [Filer] made misrepresentations to the bankruptcy court; (3) in order to further the scheme." *See United States v. Holstein*, 618 F.3d 610, 611–12 (7th Cir. 2010).

Judge Leinenweber ruled that, "at minimum, the government has failed to establish the second element; namely, that Filer made any misrepresentation to the bankruptcy court." *See* Trial Tr. Vol. 10-A, at 1829 (Dckt. No. 212).

Judge Leinenweber based his ruling on the lack of control by Filer. Basically, another attorney (Tom Fawkes) was running the show on the bankruptcy. The government presented no evidence that Filer was calling the shots or providing any misinformation.

The evidence showed that Fawkes was the attorney of record for Barsanti Woodwork in bankruptcy. *Id.* Fawkes testified that he was the one who "recommended that Barsanti Woodwork file for . . . [Chapter] 7 bankruptcy." *Id.* He also testified that "he signed the relevant bankruptcy filings and the certification that he would conduct a reasonable inquiry and ultimately file the petition on behalf of Barsanti Woodwork." *Id.*

Meanwhile, "Fawkes did not testify that Filer had any role in drafting any of the bankruptcy filings." *Id.* "Nor did he testify that Filer provided him with any specific information that made its way into the filings, withheld documents or information that impeded his understanding of the matter, or asked him to withhold information." *Id.* Although "Fawkes did testify that Filer participated in at least one meeting where no questions went unanswered, he did not say whether Filer provided information." *Id.*

Judge Leinenweber then said a sentence that looms large in the motion at hand: "Even viewed in the light most favorable to the government, Filer's complete lack of control does not even lend itself to an inference that he caused false bankruptcy filings or intended to use Barsanti Woodwork's bankruptcy as a tool to advance his alleged fraudulent scheme." *Id.* at 1830.

Judge Leinenweber explained that Filer was not responsible for any false statements in the bankruptcy filing. "[N]one of the government's specifically identified misstatements are attributable to Filer, directly or indirectly. While Fawkes testified that he had not previously seen the K Family Trust documents and knowledge of the documents may have impacted his recommendation, he does not allege that Filer caused him not to see these documents. The record makes clear that once Fawkes was brought in to handle the bankruptcy, Filer instructed Sam Lichtenteld to bring Fawkes up to date on the matter and asked that Ashley Brandt also be looped in based on his knowledge of the client and the transactions." *Id.*

Judge Leinenweber pointed out that Kelly, not Filer, provided the information. Fawkes testified that "the alleged errors in the statements of financial affairs and the characterization of BWC Capital as a creditor . . . were caused by information provided by Kelly." *Id.* So, Judge Leinenweber concluded that this evidence "fail[ed] to even imply that Filer exercised control over the bankruptcy proceedings such that he would use these filings as a tool to advance the alleged fraud scheme." *Id.*

At bottom, Judge Leinenweber determined that "the government has not presented evidence such that a reasonable jury could conclude that he exercised control over Barsanti Woodwork's bankruptcy filings." *Id.* at 1831. So, he granted the motion for judgment of acquittal as to Counts 3 to 5. *Id.*

Next, Judge Leinenweber granted the motion for judgment of acquittal on Counts 6 and 11. *Id.* at 1832.

Count 6 was "based on the proof of claim filed by BWC Capital," while Count 11 was "based on Gereg's allegedly false representation to the bankruptcy court that the change in terms agreements were agreed to on April 5, and that Kelly's personal guarantee of the Harris Bank debt was still in effect." *Id.*

To prove the charges, the government needed to prove "(1) that [Filer] engaged in a fraudulent scheme [and] (2) that [Filer] made misrepresentations to the bankruptcy court (3) in order to further the scheme." *See Holstein*, 618 F.3d at 611–12.

Judge Leinenweber ruled that, "at a minimum, the government has, once again, failed to establish the second element of a Section 157 crime; namely, that Filer made any misrepresentation to the bankruptcy court." *See* Trial Tr. Vol. 10-A, at 1831 (Dckt. No. 212).

For starters, "BWC Capital and Gereg were represented by Vivek Jayaram" for the bankruptcy proceedings. *Id.* at 1832. "There was no testimony that Filer consulted with Jayaram or Gereg regarding this representation. Specifically, there is no evidence that Filer weighed in on the proof of claim or provided any feedback on the documents ultimately filed by BWC Capital. It is also true that there is no evidence that Filer influenced Gereg's statements to the bankruptcy court regarding the change in terms agreement or Kelly's personal liability." *Id.*

Judge Leinenweber ruled that the government "failed to make any connection between Filer and BWC Capital's filings and Gereg's statements." *Id.* As such, he concluded that "a reasonable jury [could not] conclude that Filer caused these alleged false statements," and thus granted the motion for judgment of acquittal on Counts 6 and 11. *Id.*

Judge Leinenweber reached a different conclusion on Count 8, and denied the motion for an acquittal.

Count 8 alleged that Filer "direct[ed] Ashley Brandt to withhold the K Family Trust documents in response to the subpoena from Barsanti Woodwork's bankruptcy trustee." *Id.*

To establish that kind of violation of section 152, the government needed to show that Filer "knowingly and fraudulently withh[e]ld from a United States Trustee [who is] entitled to possess[] any recorded information, including books, documents, records, and papers relating to the property or financial affairs of a debtor." *Id.* at 1832–33.

Judge Leinenweber noted that "[t]he evidence undeniably shows that Filer directed Brandt to withhold the documents." *Id.* at 1833. There were open questions of whether "the

documents were responsive to the trustee's subpoena," and "whether the decision to withhold them was done with a fraudulent intent." *Id.* So "a rational jury could conclude the documents were responsive and/or the decision to withhold them was done with a fraudulent intent." *Id.*

### *The Oral Ruling on the Motion for Acquittal – False Statements*

Next, Judge Leinenweber turned to the two counts about making false statements (Counts 14 and 15). Once again, Judge Leinenweber granted the motion for acquittal.

Counts 14 and 15 alleged two kinds of violations for false statements. Count 14 alleged bankruptcy fraud in violation of 18 U.S.C. § 157. Count 15 alleged perjury in violation of 18 U.S.C. § 1623.

Again, to establish a violation of section 157, the government needed to prove "(1) that [Filer] engaged in a fraudulent scheme [and] (2) that [Filer] made misrepresentations to the bankruptcy court (3) in order to further the scheme." *See Holstein*, 618 F.3d at 611–12.

To show perjury in violation of section 1623, the government needed to prove that Filer made "any false material declaration under oath in a court proceeding." *See United States v. Gellene*, 182 F.3d 578, 590 (7th Cir. 1999) (quotation marks omitted). A material statement is one that has "a natural tendency to influence, or was capable of influencing, the decision of the decisionmaker to which the statement was addressed." *Id.* (quotation marks omitted).

The indictment alleged three false statements: (1) "that [Filer] did not sign the discovery cover letter which represented that all records had been produced to the bankruptcy trustee," (2) "that [Filer] did not know who prepared the backdated change in terms agreement and whether his law firm provided legal services relating to the documents," and (3) "that it was Gereg that suggested the use of the confession of judgment clause in the change of terms agreement." *See* Trial Tr. Vol. 10-A, at 1834 (Dckt. No. 212).

Judge Leinenweber addressed each of the three statements in turn.

First, Judge Leinenweber concluded that the production letter could not give rise to a conviction. Basically, Filer was not responsible for its content.

"Filer testified that he did not sign the production letter, could not recall whether he saw the production letter allegedly bearing his signature prior to it being sent to the trustee, and that he first recalled seeing the signed version during his preparation." *Id.* Judge Leinenweber found that "no reasonable jury could conclude that Filer's statements regarding his recollection were false." *Id.* "Nothing on the record refutes Filer's testimony as to his memory of events occurring more than a year before his deposition." *Id.*

Judge Leinenweber also ruled that Filer's testimony did not "conceal the alleged fraud, as required under Section 157[]," and was not "material, as required by [Section] 1623." *Id.* at 1834–35. He concluded that, because "Filer went on to testify regarding his involvement in Freeborn & Peters'[s] production of the documents to the trustee[,] . . . Filer's statement did

7

nothing to conceal his participation in any of the alleged fraudulent activities." *Id.* at 1835. Likewise, "given the totality of Filer's deposition testimony," Filer's statement "could [not] have influenced the trustee." *Id.*

Second, Judge Leinenweber ruled that the change-in-terms agreement could not give rise to a conviction. "Filer testified he did not recall who prepared the change in terms agreements or whether anyone at Freeborn & Peters prepared them." *Id.*

Again, Judge Leinenweber ruled that no "rational jury could conclude that the testimony was false." *Id.* His reasoning echoed his reasoning about the previous statement. "Filer did not unequivocally testify to a fact. Instead, he stated that he did not recall events that happened more than a year previous. Nothing in the record refutes Filer's testimony regarding his recollection at the time of the deposition." *Id.*

Likewise, Judge Leinenweber ruled that "Filer's testimony on the change in terms agreement also failed to conceal any alleged fraud and was not material. Here, the trustee's counsel had the documents which showed Filer instructing Brandt to draft the documents. Accordingly, the issue of who prepared the documents was not in dispute nor a question that the trustee needed answered. Filer's testimony that he did not recall these details, therefore, could not conceal any information nor did it influence the trustee, who already had the information." *Id.*

Third, Judge Leinenweber concluded that the confession-of-judgment clause could not support a conviction for making a false statement. "Filer testified that Gereg suggested the use of the confession of judgment clause . . . ." *Id.* at 1836.

For that piece of testimony, Judge Leinenweber was more equivocal about its veracity. But despite some doubt, Judge Leinenweber ruled that the government had failed to prove every element of the alleged crimes. "While the record is not entirely clear whether this testimony was accurate, even taken in the light most favorable to the government, this statement did not conceal any alleged fraud and was not material." *Id.*

"Whether it was Gereg or Filer who first suggested using a confession of judgment, Filer's testimony and documentary evidence produced to the trustee make clear that Filer provided legal advice regarding the use of confession of judgment. The statement, therefore, does not attempt to remove him from the discussion or minimize his role in the alleged conduct." *Id.* So, "[w]hen viewed in the full context of his deposition testimony, no reasonable jury could conclude that Filer's statement on the origin of the idea in some way concealed any . . . conduct or influenced the trustee."

### *The Remaining Counts, and the Motion to Exclude Evidence*

After that ruling, only three counts remained. The remaining charges included two counts of wire fraud (Counts 1 and 2), and one count of bankruptcy fraud based on withholding documents (Count 8).

On June 27, 2021, two days after the acquittal, Filer moved to exclude any evidence or argument about conduct related to the dismissed charges. *See* Mtn. to Preclude Evid. or Arg., at 1 (Dckt. No. 162).

As Filer saw it, the government should not be allowed to present evidence or argument about any of the conduct underlying the charges that resulted in an acquittal. *Id.* ("This Court should order that the Government is precluded from offering any evidence or argument that statements or conduct by Mr. Filer was fraudulent where the Court has already ruled as a matter of law that the statements and conduct at issue are not attributable to Mr. Filer or are immaterial.").

Filer also reasoned that paragraphs 59–62 and 66–67 of the indictment should be stricken, because they related to conduct that had been thrown out with Judge Leinenweber's dismissal of the other counts. *See id.* at 1–2.

Paragraph 59 of the indictment alleged that Filer "file[d] a Chapter 7 bankruptcy [p]etition." *See* Second Superseding Indictment, at 21 (Dckt. No. 64).

Paragraph 60 alleged that Filer "caused the Schedules filed on behalf of Barsanti Woodwork to falsely represent that BWC Capital was a creditor . . . [and was] owed approximately $1,582,955," when in reality the debt was fraudulently obtained and worth much less than $1.5 million. *Id.* at 21–22.

Paragraph 61 alleged that Filer "caused the Statement of Financial Affairs filed on behalf of Barsanti Woodwork to falsely represent that Barsanti Woodwork had made no transfers of property outside the ordinary course of its business in the two years prior to filing bankruptcy," when in reality Barsanti Woodwork had transferred its assets to BWC Capital to pay off the Harris Bank loan. *Id.* at 22.

Paragraph 62 alleged that Gereg "file[d] a false proof of claim in the amount of approximately $982,955 on behalf of BWC Capital in the Barsanti Woodwork [b]ankruptcy [c]ase." *Id.*

Paragraph 66 alleged that Gereg made false representations in the Barsanti Woodwork bankruptcy case. *Id.* at 23. Namely, Gereg allegedly made false statements in the form of the backdated change-in-terms agreements, and a statement that Kelly's personal guarantee of the Harris Bank loan was still in effect when it was not. *Id.*

Lastly, paragraph 67 alleged that Filer made false representations in the bankruptcy case (the three false statements addressed in Counts 14 and 15, discussed previously). *See id.* at 24–25.

### *The Renewed Motion for Acquittal*

On June 28, 2021, Judge Leinenweber orally ruled on Filer's motion to preclude evidence. *See* Trial Tr. Vol. 11-A, at 1996–97 (Dckt. No. 213).

At the hearing, Filer reiterated his request to remove the above-described paragraphs of the indictment, based on the acquittals. As he argued, "in this 70-plus or almost 70-paragraph description of the scheme, the things that your Honor ruled as a matter of law could not be done by [Filer] in furtherance of the scheme should be taken out." *Id.*

In response, Judge Leinenweber said: "Well, they could certainly be towards the scheme, but they're not attributable to Mr. Filer. I mean, the scheme still exists because you've got two defendants who pled guilty to the whole scheme." *Id.* at 1999.

The parties presented arguments about the jury instructions, including an instruction to explain the dismissal of certain counts. The parties also discussed the potential need to strike or redact portions of the indictment, meaning the copy that the jury would receive during deliberations. *Id.* at 1999–2018.

Judge Leinenweber addressed the parts of the indictment that he thought were relevant to the surviving counts of wire fraud (Counts 1 and 2). *Id.* at 2012–13. That is, Judge Leinenweber identified the parts of the indictment that needed to come out, given the prior acquittals. *Id.*

Along the way, Judge Leinenweber made another statement that looms large in the motion at hand. "Yeah, the bankruptcy step is out. The other steps are in, except to the extent I did rule that it was not as a matter of law that, I think, the use of the confession of judgment." *Id.* at 2013.

Judge Leinenweber later confirmed that interpretation, over the objection of the government. "Yeah, I've ruled. We're going to continue with the case." *Id.* at 2015–16. He also determined that he would not send the indictment back with the jury, because there was "too much stuff in there." *Id.* at 2016.

The defense then put on its case. *Id.* at 2018.

On June 29, 2021, after the close of the defense's evidence, Filer renewed his motion for judgment of acquittal on the remaining counts. *See generally* Mtn. for J. of Acquittal (Dckt. No. 169). Again, to grant the motion, Judge Leinenweber would need to find that, "viewing the evidence in the light most favorable to the prosecution, the record contains no evidence on which a rational jury could have returned a jury verdict." *Murphy*, 406 F.3d at 861.

On June 30, 2021, Judge Leinenweber orally ruled on the renewed motion for an acquittal. *See* Trial Tr. Vol. 13-A (Dckt. No. 209).

Judge Leinenweber denied the motion for acquittal on the two counts of wire fraud (Counts 1 and 2), offering a similar rationale as before. He noted that both counts turned on two issues: (1) "the validity of the lien held by BWC Capital," and (2) "Filer's intent when engaging in the charged conduct." *Id.* at 2398.

Judge Leinenweber determined that "whether the lien was enforceable is a question of fact for the jury." *Id.* at 2399. And because "a rational jury could conclude that the lien was not

enforceable and [that] Filer acted with intent to deceive," he denied Filer's motion for judgment of acquittal on Counts 1 and 2. *Id.*

However, Judge Leinenweber came to a different conclusion on the last remaining count of bankruptcy fraud (Count 8). Judge Leinenweber changed course and granted the motion for judgment of acquittal. *Id.* at 2399. He noted that "all of the documents that were required to be produced were, in fact, produced." *Id.* So, he reasoned that "the delay . . . should [not] amount to a finding of fraudulent intent because the documents were, in fact, produced, and the documents were not hidden from the . . . records held by the law firm." *Id.*

### *The Jury Verdict, the Post-Verdict Acquittal, and the Appeal*

After that ruling, the parties delivered closing arguments. *See id.* at 2400. The jury began deliberating later that day. *See* 6/30/21 Order (Dckt. No. 171).

The jury returned a verdict of guilty on both counts of wire fraud (Counts 1 and 2). *See* Jury Verdict, at 1–2 (Dckt. No. 174).

Filer moved for judgment of acquittal, or, in the alternative, a new trial. *See generally* Mtn. for J. of Acquittal (Dckt. No. 179). Judge Leinenweber granted the motion for judgment of acquittal, and then denied the motion for a new trial as moot. *See generally* Mem. Op. and Order (Dckt. No. 184).

The government appealed the judgment of acquittal on Counts 1 and 2. *See* Notice of Appeal, at 1 (Dckt. No. 185). Filer cross-appealed the denial of the motion for a new trial. *See* Notice of Appeal, at 1 (Dckt. No. 191).

The Seventh Circuit remanded the case to Judge Leinenweber to determine whether the "motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed and to provide reasons for [his] determination." *See* Order of Court of Appeals, at 1 (Dckt. No. 203).

Judge Leinenweber vacated his previous ruling on the motion for a new trial and instead granted the motion. *See* Mem. Op. and Order, at 1 (Dckt. No. 217).

The government appealed the motion for a new trial. *See* Notice of Appeal, at 1 (Dckt. No. 223). But the government later voluntarily dismissed its appeal of the order on the motion for a new trial. *See* Order of Court of Appeals, at 1 (Dckt. No. 231).

### *The Decision by the Court of Appeals*

The Seventh Circuit reversed the judgment of acquittal on Counts 1 and 2 and remanded the case for a new trial. *See United States v. Filer*, 56 F.4th 421, 425 (7th Cir. 2022).

The Seventh Circuit began by describing the government's theory and the evidence that the government presented at trial. For present purposes, the key point is that the bankruptcy was part of the wire-fraud scheme.

"At trial, the government argued that the scheme to defraud Barsanti Woodwork's creditors occurred in two steps." *Id.* at 425. "First, Filer helped the owner of Barsanti Woodwork, Paul Kelly, obtain effective control of Harris Bank's senior lien against his company's assets through the use of a nominee purchaser." *Id.* "Second, Filer . . . then used that lien to obtain a state court judgment that allowed [Defendants] to transfer Barsanti Woodwork's assets – but not its liabilities – to a new company effectively but secretly controlled by Kelly before putting Barsanti Woodwork into bankruptcy." *Id.*

The Seventh Circuit then analyzed whether, "[v]iewing the evidence in the light most favorable to the prosecution, we conclude that the government presented sufficient evidence at trial from which a rational jury could find those essential elements of the [wire-fraud] crime beyond a reasonable doubt." *Id.* at 427.

In its analysis of the wire-fraud charges, the Seventh Circuit considered several types of evidence. This Court will hit the highlights, covering the kinds of evidence that are relevant for the purposes of Filer's current motion.

First, the Seventh Circuit considered evidence of a scheme to defraud. It recounted the evidence of Filer's alleged "misstatements he made concerning the backdated Change in Terms Agreements that provided the confession-of-judgment clauses," and his misstatements concerning "the inflated debt figure." *Id.* at 434. The Seventh Circuit reasoned that the "government presented sufficient evidence that Filer made materially false statements." *Id.* In other words, the Seventh Circuit disagreed with Judge Leinenweber's conclusion that his false statements could not have been material.

So, the Seventh Circuit concluded that "[t]he evidence of a scheme to defraud was sufficient to support the guilty verdicts." *Id.*

Turning to the element of intent, the Seventh Circuit considered evidence of Filer's actions in the bankruptcy proceeding. The Seventh Circuit pointed to evidence that "after Barsanti Woodwork filed for bankruptcy and the bankruptcy trustee subpoenaed documents related to Filer's representation of Barsanti Woodwork, Filer instructed his colleague to withhold the assignment documents and related correspondence from the trustee." *Id.* at 435.

In doing so, the Seventh Circuit rejected a Double Jeopardy argument brought by Filer. It noted that "[t]he district court acquitted Filer of withholding documents from the bankruptcy trustee because it reasoned that all of the documents were eventually produced." *Id.* at 435 n.4. But it reasoned that, "[w]hether that is a sufficient basis for acquittal[,] . . . [w]hat matters is that the district court did not find that Filer did not instruct his colleague to withhold the documents, so our consideration of that evidence here does not offend the Double Jeopardy Clause." *Id.*

The Seventh Circuit then analyzed the evidence presented by the government. In its view, "[c]onsidering evidence that Filer directed his colleague to withhold documents from the bankruptcy trustee, the jury could have reasonably rejected Filer's argument that filing for bankruptcy was an act of transparency." *Id.* at 436. The Seventh Circuit also reasoned that "[t]he jury was . . . not required to conclude that the email discussions between Filer, Kelly, and Gereg were inconsistent with a hidden scheme. . . . If the schemers had not put Barsanti Woodwork into bankruptcy, their emails likely would have never been revealed." *Id.*

So, the Seventh Circuit concluded that "[t]he evidence of Filer's intent to defraud was sufficient to support the guilty verdicts." *Id.* In other words, "a rational jury could find that Filer intended to defraud Barsanti Woodwork's creditors." *Id.*

Along the way, the Seventh Circuit also acknowledged that the alleged victims of the scheme were Barsanti Woodwork's unsecured creditors. "[T]he evidence . . . supported a finding that [Filer] engaged in a scheme to defraud Barsanti Woodwork's unsecured creditors." *Id.* at 432. And "[a]t the very least, the scheme was designed to deceive the unsecured creditors and thus discourage them from even trying to recover on their claims." *Id.* at 433. By "unsecured creditors," the Seventh Circuit "refer[red] to the creditors affected in step two of the scheme: the Union Fund." *Id.* at 433 n.3.

On remand, the case was reassigned to this Court for a new trial. *See* Exec. Comm. Order (Dckt. No. 250). A flurry of motions *in limine* soon followed.

In the motion at hand, Filer seeks to exclude evidence or argument about any of the conduct underlying the charges that were previously dismissed by Judge Leinenweber. *See* Mtn. in Limine, at 1 (Dckt. No. 280). He asks this Court to bar any evidence about the bankruptcy. Or at the very least, he seeks to prevent the government from presenting evidence on specific facts related to the bankruptcy.

## Analysis

Filer offers a sweeping vision of the Double Jeopardy Clause. He asks this Court to preclude a wide range of evidence, including anything and everything related to the bankruptcy. In his view, the dismissal of the counts of bankruptcy fraud means that any references to the bankruptcy are outside the field of play. In the alternative, Filer asks this Court to exclude specific pieces of evidence.

In response, the government revealed plans for a whittled-down case. The government seeks to present three pieces of evidence about the bankruptcy at the upcoming trial.[2] So Filer went big, and in response, the government went small.

---

[2] The government also argues that collateral estoppel does not apply because the jury and Judge Leinenweber returned inconsistent verdicts, relying on *Bravo-Fernandez v. United States*, 580 U.S. 5 (2016). The Court disagrees. The Supreme Court in *Bravo-Fernandez* addressed the application of collateral estoppel when a jury returns a general verdict on multiple counts, and the verdicts are inconsistent. In that situation, the court is left to guess and wonder why the jury did what it did. That's not the situation here. Judge Leinenweber explained why he was granting the judgments of acquittal.

This Court will begin with an overview of the Double Jeopardy Clause. Next, the Court will address the evidence that the government wants to present, and will consider whether it passes muster under the Double Jeopardy Clause. Then, the Court will address Filer's arguments about double jeopardy. At that point, the Court will turn to the admissibility of the evidence under Rule 403.

The punchline is that the government can present the evidence that it seeks to present. The Double Jeopardy Clause does not stand in the way of the admissibility of the rest of the evidence about the bankruptcy. But Rule 403 does pose some barriers.

## I.     The Double Jeopardy Clause

The Fifth Amendment provides that "[n]o person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb." *See* U.S. Const. amend. V.

"The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *See Green v. United States*, 355 U.S. 184, 187–88 (1957). "This guarantee recognizes the vast power of the sovereign, the ordeal of a criminal trial, and the injustice our criminal justice system would invite if prosecutors could treat trials as dress rehearsals until they secure the convictions they seek." *See Currier v. Virginia*, 585 U.S. 493, 498 (2018).

The Double Jeopardy Clause "protects a man who has been acquitted from having to 'run the gantlet' a second time." *Ashe v. Swenson*, 397 U.S. 436, 446 (1970). If the one-bite-at-the-apple rule applies anywhere, it applies in criminal prosecutions. Once decided, twice barred.

As originally crafted, the Double Jeopardy Clause protected individuals from the perils of a second prosecution after an acquittal for the same offense. After all, that's what the text says. A person cannot be "subject for the same *offence*" twice. *See* U.S. Const. amend. V (emphasis added); *see also Yeager v. United States*, 557 U.S. 110, 127–31 (2009) (Scalia, J., dissenting).

That phraseology stands in stark contrast to the text of a neighboring constitutional provision. The Seventh Amendment provides that "no *fact* tried by a jury[] shall otherwise be reexamined." *See* U.S. Const. amend. VII (emphasis added).

The Supreme Court recently reinforced that the Double Jeopardy Clause "does not prohibit twice placing a person in jeopardy for the same conduct or actions." *See Denezpi v. United States*, 596 U.S. 591, 597 (2022) (Barrett, J.) (citation omitted). It applies only to "offenses." *Id.* And the term "offenses" was "commonly understood in 1791 to mean 'transgression,' that is, 'the violation of the law.'" *Id.* (cleaned up).

---

And in any event, the conclusions of the jury and Judge Leinenweber were not necessarily inconsistent – a defendant could be guilty of wire fraud without committing bankruptcy fraud.

A few decades ago in *Ashe*, the Supreme Court expanded the reach of the Double Jeopardy Clause through what it later gently described as a "significant innovation in [its] jurisprudence." *See Currier*, 585 U.S. at 499. In *Ashe*, the Supreme Court held that the Double Jeopardy Clause is not limited to the same offense. It also applies to certain facts decided in a defendant's favor in an earlier trial. *See Ashe*, 397 U.S. at 442–45.

The case involved a robbery during poker night. A group of assailants robbed the poker players. The defendant was charged separately with robbing two different card players. At his first trial, he was acquitted of robbing the first victim. He then stood trial for robbing another card player, and was convicted.

The Supreme Court in *Ashe* held that the second trial violated the Double Jeopardy Clause. The first jury found that the defendant wasn't one of the robbers at the poker game. So he didn't rob anyone else at the poker table, either.

The "single rationally conceivable" finding by the first jury was that the defendant was not one of the robbers. *Id.* at 445. As a result, the government couldn't prosecute the defendant for robbing Card Player #2 at poker night, because the first jury found that he wasn't one of the robbers who robbed Card Player #1. *Id.*

In the wake of *Ashe*, the Double Jeopardy Clause "embodie[s]" the principle of collateral estoppel, also known as issue preclusion. *Id.* at 445; *see also Bobby v. Bies*, 556 U.S. 825, 829 n.1 (2009) (expressing a preference for the term issue preclusion, instead of collateral estoppel). Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443.

That said, double jeopardy is more limited than it might appear at first blush. In fact, the test "is a demanding one." *See Currier*, 585 U.S. at 499.

In a nutshell, double jeopardy looks back, and looks forward. Looking back, the question is whether a jury necessarily decided a particular fact in the defendant's favor in the first trial. Looking forward, the question is whether the prosecution must prove that particular fact in the second trial. Both answers need to be "yes" for double jeopardy to apply.

In other words, double jeopardy isn't as simple as asking whether a prior jury might have or could have found a particular fact in the defendant's favor. The jury must have necessarily decided that fact in the defendant's favor in the first trial. And the issue must be essential in the second trial – that is, it must be a necessary element that the prosecution must prove beyond a reasonable doubt. Otherwise, double jeopardy doesn't come into play.

The first piece of the puzzle is the basis for the prior acquittal. "[T]he Double Jeopardy Clause precludes the Government from relitigating an issue that was *necessarily decided* by a jury's acquittal in a prior trial." *Yeager*, 557 U.S. at 119 (emphasis added); *see also Currier*, 585 U.S. at 499 ("*Ashe* forbids a second trial only if to secure a conviction the prosecution must prevail on an issue the jury necessarily resolved in the defendant's favor in the first trial."). This

rule applies equally to an acquittal rendered by a judge. *See United States v. Pacheco*, 434 F.3d 106, 112 (1st Cir. 2006).

To determine whether a fact was "necessarily decided," a district court must take a close look at the record in the prior case, "set in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Ashe*, 397 U.S. at 444. A district court must "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury [or judge] could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Id.* The name of the game is "realism and rationality." *Id.*

The phrase "necessarily decided" really does mean *necessarily* decided. "A second trial 'is not precluded simply because it is unlikely – or even very unlikely – that the original jury acquitted without finding the fact in question.'" *Currier*, 585 U.S. at 500 (citation omitted). To conclude that a fact was necessarily decided, "and thus forbidden by the Double Jeopardy Clause, we must be able to say that 'it would have been *irrational* for the jury' in the first trial to acquit without finding in the defendant's favor on a fact essential to a conviction in the second." *Id.* (citation omitted) (emphasis in original).

That's the first piece of the puzzle – the basis for the first acquittal. The other piece of the puzzle involves the elements of the crime in the second prosecution.

It is not enough to say that a prior jury already decided a particular fact in the defendant's favor. For double jeopardy to apply, the issue must be an "*ultimate* issue in the [subsequent] prosecution," that is, a conviction would require that "the issue be proven beyond a reasonable doubt." *United States v. Bailin*, 977 F.2d 270, 280 (7th Cir. 1992) (alterations in original) (quoting *Dowling v. United States*, 493 U.S. 342, 348–51 (1990)); *see also United States v. Salerno*, 108 F.3d 730, 741 (7th Cir. 1997) ("[I]ssue preclusion only applies when a relevant issue in a subsequent prosecution is an 'ultimate issue,' *i.e.*, an issue that must be proven beyond a reasonable doubt.").

The question is whether a fact is "essential to a conviction" in the second trial. *See Currier*, 585 U.S. at 500. The Double Jeopardy Clause "completely bars a subsequent prosecution only when a fact 'necessarily determined' in the first prosecution is an *essential* element of the offense charged in the subsequent prosecution." *See United States v. Brackett*, 113 F.3d 1396, 1399 (5th Cir. 1997) (emphasis added).

An "essential" fact is much different than evidence that merely supports the government's case. The Double Jeopardy Clause does not "exclude in all circumstances . . . relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted." *See Dowling*, 493 U.S. at 348.

In *Dowling*, the Supreme Court cemented the wall between "ultimate issues" and facts that merely support ultimate issues. In that case, the defendant was acquitted of burglarizing a home, but was later charged and tried for robbing a bank. At the trial for bank robbery, the

government sought to present evidence that defendant wore a mask during the home burglary. The fact that the defendant wore a mask in the home burglary supported the notion that the defendant was the person wearing a similar mask in the bank robbery.

The defendant argued that "his prior acquittal precluded the Government from introducing into evidence [the burglary victim]'s testimony . . . in the bank robbery case." *Id.* at 348.

The Supreme Court "disagree[d] because, unlike the situation in *Ashe v. Swenson,* the prior acquittal did not determine an *ultimate issue* in the present case." *Id.* (emphasis added). "[T]o introduce evidence on this point at the bank robbery trial, the Government did not *have to* demonstrate that Dowling was the man who entered the home beyond a reasonable doubt." *Id.* (emphasis added). The evidence may have supported the government's case. But the evidence was not essential to the government's case.

In other words, the government did not *have to* prove that the defendant wore a mask in the home burglary to prove the crime of bank robbery. Whether the defendant wore a mask during the home burglary was not an ultimate issue in the bank robbery, because the government didn't have to prove it at all. So the Double Jeopardy Clause didn't come into play.

After *Dowling*, lower courts have widely recognized that double jeopardy does not apply unless the fact in question is an essential element of the government's case in the second trial. *See, e.g.*, *Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1071 (6th Cir. 2015) ("'[U]ltimate facts' in the estoppel context [are] those that are 'necessary to the judgment' at issue . . . Thus, we must examine whether, in this particular case, the State's theory of force made it necessary to prove that [the defendant] possessed a firearm to establish that essential element beyond a reasonable doubt." (quoting *Bobby v. Bies*, 556 U.S. 825, 835 (2009))); *United States v. Ahrensfield*, 698 F.3d 1310, 1322–23 (10th Cir. 2012) ("Where the government is not required to prove the offered evidence relating to the prior acquittal beyond a reasonable doubt, 'the collateral-estoppel component of the Double Jeopardy Clause is inapposite.'" (quoting *Dowling*, 493 U.S. at 348–49)); *Clark v. Spencer*, 582 F.3d 135, 145–46 (1st Cir. 2009) (upholding the admission of evidence that the defendant used a gun to commit rape despite a prior acquittal on "rape by penetration with a gun," because the "jury at [the defendant's] third trial, in convicting him of kidnapping and two rape counts, did not necessarily have to find that [the defendant] had a gun"); *United States v. Wells*, 347 F.3d 280, 285 (8th Cir. 2003) ("A fact previously determined in a criminal case is not an 'ultimate fact' unless it was necessarily determined by the jury against the government and, in the second prosecution, that same fact is required to be proved beyond a reasonable doubt in order to convict."); *United States v. Gil*, 142 F.3d 1398, 1401–02 (11th Cir. 1998) ("'[T]ouching' cocaine is not an element of the conspiracy [to possess cocaine with intent to distribute] count. Thus, even if the [first] jury found that [the defendant] did not touch the cocaine, it did not determine an ultimate issue with regard to the conspiracy count, and the government's retrial of [the defendant] on the conspiracy count would not constitute double jeopardy."); *Santamaria v. Horsley*, 133 F.3d 1242, 1247 (9th Cir. 1998) ("In this case, the State failed to prove beyond a reasonable doubt the ultimate fact that [the defendant] used a knife for the weapon enhancement in the first trial. However, to convict him of murder under California law, the State is not required to prove beyond a reasonable doubt that [the defendant] used a

knife. Therefore, the use of a knife is not an ultimate fact for the retrial, and the State cannot be precluded from presenting evidence that [the defendant] stabbed the victim.").[3]

Boiling it all down, and putting it all together, the Double Jeopardy Clause has twin requirements. The question is what the jury "necessarily decided" in the first trial, and what the government must prove as the "ultimate issue" in the second trial.

The paradigm seems to be "needed to prove but didn't prove before" *and* "must prove now." That is, double jeopardy applies if the government needed to prove "X" but *didn't* prove "X" in the first trial, *and* if the government *must* prove "X" in the second trial. In that scenario, the government is out of luck, and the defendant is off the hook.

Ultimately, a defendant has "the burden of proving, based on the indictment, evidence, instructions, and verdict, that the jury's acquittals necessarily determined issues which, on retrial, must be proven beyond a reasonable doubt." *Bailin*, 977 F.2d at 280–81; *see also Dowling*, 493 U.S. at 350–51 (adopting the "majority rule" that the "burden [is] on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding").

In sum, the question at hand is whether Filer has demonstrated that the first jury necessarily decided a fact in his favor in the first trial that the government must prove in the second trial.

## II.    The Government's Evidence

The government responded to the motion by offering a short list of evidence that it seeks to present at trial. Basically, the government doesn't want to present every piece of evidence under the sun related to the bankruptcy.

Instead, the government seeks to present only three pieces of evidence. Specifically, the government wants to offer evidence that "(1) a bankruptcy petition was filed for an assetless Barsanti Woodwork and its timing was due to the judgment obtained by the Carpenter's Union Trust Funds, (2) the Assignment and Conveyance of Title document that was transmitted by the email that is the execution charged in Count One was presented in a creditors' meeting conducted in the Barsanti Woodwork bankruptcy case, and (3) in response to a subpoena issued by the bankruptcy trustee, Filer caused responsive records to be concealed from the trustee." *See* Gov't's Resp. to Mtn. *in Limine*, at 3 (Dckt. No. 303).

All of that evidence is fair game. None of that evidence is barred by the Double Jeopardy Clause.

---

[3] At least one court has considered and rejected the contention that "the central principle of *Dowling* is limited solely to the Rule 404(b) context." *See Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1075 (6th Cir. 2015). The Sixth Circuit noted that no Supreme Court precedent clearly supports that argument and it would be "inconsistent with the approach taken by [] other circuits [], which each applied *Dowling* in situations that did not involve 404(b) evidence." *Id.*

Again, issue preclusion is reserved for issues *necessarily decided* by a prior acquittal, and only those issues that are *ultimate issues* in the subsequent prosecution. *See Currier*, 585 U.S. at 499; *Yeager*, 557 U.S. at 119; *Bailin*, 977 F.2d at 280. If a prior acquittal necessarily decided "not X," then the government in a later prosecution cannot argue "X" when "X" is an ultimate issue.

Applying that standard, all three pieces of evidence pass muster.

First, the government can present evidence that Barsanti Woodwork filed for bankruptcy. The government also can present evidence about when the bankruptcy filing took place.

Judge Leinenweber did not acquit Filer of bankruptcy fraud based on the notion that there *was no* bankruptcy. And Judge Leinenweber didn't make a finding about when the filing took place. The existence and timing of the bankruptcy were not decided by Judge Leinenweber in favor of Filer, and they weren't the basis for any of the acquittals. So they're fair game.

Second, the government can present evidence that a creditors' meeting took place, and that the Assignment and Conveyance of Title document was presented at that meeting. Again, Judge Leinenweber never ruled to the contrary.

Third, the government can present evidence that Filer caused responsive records to be concealed from the bankruptcy trustee. At first blush, that issue might seem a bit closer, because Judge Leinenweber did acquit Filer of charges related to the concealment of records.

But the basis for that ruling is what matters, not the bottom-line conclusion. An acquittal, standing alone, is not enough to bar any and all evidence that touches on the issue.

Judge Leinenweber did not acquit Filer based on the notion that Filer did not conceal documents. If anything, Judge Leinenweber did the opposite. He stated that the evidence "undeniably shows that Filer directed Brandt to withhold the documents." *See* Trial Tr. Vol. 10-A, at 1833 (Dckt. No. 212).

Instead, Filer was acquitted because the bankruptcy trustee ultimately received the documents. Judge Leinenweber noted that "all of the documents that were required to be produced were, in fact, produced." *See* Trial Tr. Vol. 13-A, at 2399 (Dckt. No. 209). So, he reasoned that "the delay . . . should [not] amount to a finding of fraudulent intent because the documents were, in fact, produced, and the documents were not hidden from the . . . records held by the law firm." *Id.*

In fact, the Seventh Circuit gave the green light to the presentation of evidence about the concealment of documents. The Seventh Circuit addressed the sufficiency of the evidence on the charges of wire fraud. Along the way, the Seventh Circuit expressly pointed to evidence about the concealment of records. As it explained, "[w]hat matters is that the district court did not find that Filer did not instruct his colleague to withhold the documents, so our consideration of that evidence here does not offend the Double Jeopardy Clause." *See Filer*, 56 F.4th at 436 n.4.

The Seventh Circuit held that withholding responsive documents is evidence of an intent to defraud. *Id.* at 435–36. So it can play a role in the second trial about wire fraud. It would be strange to point to the concealment of bankruptcy-related documents as evidence of a wire-fraud scheme if the concealment of bankruptcy-related documents was out of bounds for the wire-fraud scheme.

That said, the Double Jeopardy Clause might come into play if the government attempted to present evidence that the bankruptcy trustee never received the documents at all (under the first part of the test for double jeopardy, anyway). But based on the proffer, the government does not intend to go there.

In sum, the government seeks to present a limited collection of evidence about the bankruptcy at the second trial. Judge Leinenweber did not decide any of those facts in Filer's favor in the first trial. And the facts do not speak to ultimate issues, either. So they're fair game.

## III.    Defendant's Theory of Double Jeopardy

Filer puts forward a sweeping vision of the preclusive effect of the prior acquittals. As he sees things, the prior acquittals mean that anything and everything related to the bankruptcy is out of bounds. As an alternative, he tries to trim the case by excluding specific pieces of evidence.

This Court will go broad, and then go narrow. The Court will examine whether the bankruptcy itself is out of bounds, before turning to specific pieces of evidence.

### A.    The Bankruptcy in General

Filer begins with a big ask. He argues that the government "should be estopped from introducing any evidence or argument regarding the bankruptcy proceedings." *See* Mtn. *in Limine*, at 7 (Dckt. No. 280). He points to the acquittals on Counts 3 to 5.

As Filer sees things, Judge Leinenweber "clearly stated that the 'bankruptcy scheme' was completely 'out' of the case and repeatedly admonished the [g]overnment that it was prohibited from presenting ***any facts*** about the underlying 'bankruptcy scheme' to the jury." *Id.* (quoting Trial. Tr Vol. 11-A, at 2013 (Dckt. No. 213) (emphasis in original)). Filer argues that any and all references to the bankruptcy should be out of bounds at trial.

This Court disagrees. True, Judge Leinenweber acquitted Filer on the bankruptcy-fraud charges in Counts 3 to 5 in his first Rule 29(a) ruling.

But acquittals on "bankruptcy fraud" do not mean that anything and everything related to the bankruptcy is out of bounds. The Double Jeopardy Clause does not prohibit any and all references to the bankruptcy. The Double Jeopardy Clause does not extend that far.

Instead, the Double Jeopardy Clause prohibits relitigating only those issues that were *necessarily decided* at the previous trial. *See Yeager*, 557 U.S. at 119. And the issue must be an ultimate issue in the next trial. *See Bailin*, 977 F.2d at 280.

Again, Judge Leinenweber never said that the bankruptcy didn't happen. And he never said that the bankruptcy didn't take place at a particular time. That's reason enough to conclude that the existence and timing of the bankruptcy is within the field of play.

Filer puts great stock into Judge Leinenweber's statement that "the bankruptcy step is out." *See* Trial Tr. Vol. 11-A, at 2013 (Dckt. No. 213). But context matters. And so does timing.

Judge Leinenweber did not make that statement when he acquitted Filer of bankruptcy fraud. Instead, Judge Leinenweber made that statement days later, when he outlined the scope of permissible evidence on the remaining wire-fraud charges. Judge Leinenweber said that sentence on June 28, 2021, three days after he acquitted Filer of bankruptcy fraud on June 25, 2021.

That is, Judge Leinenweber did not rule that "the bankruptcy step is out" when acquitting Filer of bankruptcy fraud. Instead, Judge Leinenweber said that "the bankruptcy step is out" days later, when discussing the remaining counts of wire fraud. He addressed how the acquittals for bankruptcy fraud would affect the admissibility of evidence about wire fraud. The phrase "the bankruptcy step is out" was not a statement explaining the acquittals for bankruptcy fraud.

Put another way, the statement was about the scope of future evidence for wire fraud, not an explanation of a past acquittal for bankruptcy fraud. And it was a legal conclusion – it was a ruling about whether evidence was in or out. It did not necessarily decide any question of fact in Filer's favor.

And in any event, that stand-alone sentence was too cursory and too cryptic to support collateral estoppel under the Double Jeopardy Clause. There's no fact to hang your hat on.

What's more, Judge Leinenweber acknowledged at the same hearing that parts of the bankruptcy could be relevant to the wire-fraud scheme as a whole, even though they were not relevant to the bankruptcy-fraud charges against Filer (because they were not attributable to Filer). As Judge Leinenweber explained: "Well, they could *certainly be towards the scheme*, but they're not attributable to Mr. Filer. I mean, the scheme still exists because you've got two defendants who pled guilty to the whole scheme." *See* Trial Tr. Vol 11-A, at 1999 (Dckt. No. 213) (emphasis added).

Plus, the Seventh Circuit reversed Judge Leinenweber when it came to the sufficiency of the evidence on the wire-fraud charges. So, Judge Leinenweber's evidentiary ruling on the wire-fraud counts is not binding on this Court in the collateral-estoppel sense. Judge Leinenweber's judgment on the wire-fraud counts is not a valid and final judgment on the matter. *See Ashe*, 397 U.S. at 446.

In the end, Filer is putting too much on too little. Judge Leinenweber offered a cryptic sentence days after the acquittals for bankruptcy fraud. He did so when addressing the admissibility of evidence for wire fraud. That statement did not decide a question of fact about the bankruptcy in Filer's favor. And in the end, Judge Leinenweber's rulings about the evidence of wire fraud did not stand the test of time.

Even if Judge Leinenweber did make a finding about the bankruptcy, it would not make a difference. The bankruptcy is part of the alleged fraud scheme. But it is not an essential element of the government's case about wire fraud. It is not the ultimate issue for the charges of wire fraud, so it does not give rise to double jeopardy. *See Currier*, 585 U.S. at 499; *Yeager*, 557 U.S. at 119; *Bailin*, 977 F.2d at 280. The government could prove wire fraud without it.

Filer's motion *in limine* is denied to the extent that he seeks to exclude any and all evidence about the bankruptcy of Barsanti Woodwork.

## B. Specific Pieces of Evidence

In the alternative, Filer seeks to exclude certain pieces of evidence. The Court will take them up, one at a time.

At some level, maybe there is no need to get into other pieces of evidence, because the government represented that it doesn't intend to present that evidence anyway.

Even so, it's never a bad thing to lay down clear boundaries. Good fences, good trial. So the Court will install the fences.

### 1. Fawkes's Statements

The first collection of evidence is about Filer's responsibility for statements made during the bankruptcy. The statements in question came from another lawyer (Fawkes).

Filer argues that Judge Leinenweber made three specific findings in his favor: "(1) Filer did not 'cause' the bankruptcy filings, (2) none of the allegedly false statements in the bankruptcy filings were attributable to Filer, either directly or indirectly, and (3) Filer did not intend to use the bankruptcy to advance the alleged fraudulent scheme." *See* Mtn. *in Limine*, at 6 (Dckt. No. 280).

Recall that the government had to prove three elements for a conviction under Counts 3 to 5. First, Filer engaged in a fraudulent scheme. Second, Filer made misrepresentations to the bankruptcy court. Third, Filer made those misrepresentations in order to further the scheme. *See Holstein*, 618 F.3d at 611–12.

Judge Leinenweber ruled that, "at minimum, the government has failed to establish the second element; namely, that Filer made any misrepresentation to the bankruptcy court." *See* Trial Tr. Vol. 10-A, at 1829 (Dckt. No. 212). He based his conclusion on a litany of testimony

22

from Fawkes, Barsanti Woodwork's bankruptcy attorney. Fawkes testified that Filer did not provide him with information or participate in drafting the bankruptcy filings. *Id.*

Judge Leinenweber decided that Filer did not make any misrepresentations in the bankruptcy filings because he did not have sufficient control over Fawkes. Filer lacked control, so Filer was not responsible for any alleged misrepresentations made by Fawkes in the bankruptcy filings.

The Court agrees with Filer, in part. Judge Leinenweber acquitted Filer of bankruptcy fraud because the government failed to present evidence that Filer was personally responsible for any false statements. He decided that issue in Filer's favor. So, to that extend, Filer has satisfied the first part of the test under the Double Jeopardy Clause. (For the moment, the Court will put aside the second part of the test.)

But Filer also seeks a broader prohibition, based on another sentence by Judge Leinenweber. When he acquitted Filer of bankruptcy fraud, Judge Leinenweber stated: "Filer's complete lack of control does not even lend itself to an inference that he caused false bankruptcy filings or intended to use Barsanti Woodwork's bankruptcy as a tool to advance his alleged fraudulent scheme." *Id.* at 1830.

That sentence may leave a little something to be desired. If you had to reread it, you're not alone. It's not the clearest, cleanest statement in a long, thoughtful ruling.

Even so, context matters. The context helps to clear up any ambiguity.

Judge Leinenweber was in the middle of summarizing the evidence. The record included no evidence that Filer was personally responsible for the bankruptcy filings. *Id.* at 1829–31. Judge Leinenweber summarized Fawkes's testimony on that subject.

After delivering the sentence in question, Judge Leinenweber stated: "Moreover, none of the government's specifically identified misstatements are attributable to Filer, directly or indirectly." *Id.* at 1830. A few sentences later, Judge Leinenweber stated that "[t]his evidence similarly fails to even imply that Filer exercised control over the bankruptcy proceedings such that he would use these filings as a tool to advance the alleged fraud scheme." *Id.*

And then, Judge Leinenweber delivered the punchline: "the government has not presented evidence such that a reasonable jury could conclude that he exercised control over Barsanti Woodwork's bankruptcy filings." *Id.* at 1831.

Viewed in context, the meaning of Judge Leinenweber's statement comes into sharper focus. Judge Leinenweber ruled that Filer did not commit bankruptcy fraud when it came to the false statements, because there was no evidence that Filer was responsible for the false statements.

Judge Leinenweber did not make the blanket ruling that Filer did not have an intent to defraud in connection with the bankruptcy. The ruling was more limited, and was confined to the issue of control over the filings in question.

That is, Judge Leinenweber *necessarily* decided that Filer did not make any misrepresentations to the bankruptcy court because Fawkes's statements were not attributable to Filer. It is unreasonable to read the tail end of Judge Leinenweber's solitary sentence more broadly, as a sweeping finding on the issue of fraudulent intent in Filer's favor.

Evidence about the false statements in the bankruptcy satisfies the first part of the standard for double jeopardy. That is, Judge Leinenweber indisputably decided that Filer was not responsible for the false statements.

Even so, Filer once again gets hung up on the second part of the test. False statements in the bankruptcy are not an essential element in the wire fraud counts, so double jeopardy does not apply. *See Currier*, 585 U.S. at 499; *Yeager*, 557 U.S. at 119; *Bailin*, 977 F.2d at 280.

## 2. Gereg's Filings and Statements

In a similar vein, Filer seeks to exclude evidence related to false statements and filings in the bankruptcy by BWC Capital and by Gereg, the financial advisor and workout specialist. *See* Mtn. *in Limine*, at 11 (Dckt. No. 280). He points to Judge Leinenweber's dismissal of Counts 6 and 11.

As a refresher, Counts 6 and 11 involved bankruptcy fraud. Count 6 was based on the proof of claim filed by BWC Capital in bankruptcy court. Count 11 was based on Gereg's allegedly false representations to the bankruptcy court about the backdated change-in-terms agreements and Kelly's personal guarantee. *See* Trial Tr. Vol. 10-A, at 1831 (Dckt. No. 212).

The elements are now familiar. The government had to show "(1) that [Filer] engaged in a fraudulent scheme [and] (2) that [Filer] made misrepresentations to the bankruptcy court (3) in order to further the scheme." *See Holstein*, 618 F.3d at 611–12.

Judge Leinenweber ruled that, "at a minimum, the government has, once again, failed to establish the second element of a Section 157 crime; namely, that Filer made any misrepresentation to the bankruptcy court." *See* Trial Tr. Vol. 10-A, at 1831 (Dckt. No. 212).

Specifically, Judge Leinenweber noted that "there [was] no evidence that Filer weighed in on the proof of claim or provided any feedback on the documents ultimately filed by BWC Capital. It is also true that there is no evidence that Filer influenced Gereg's statements to the bankruptcy court regarding the change in terms agreement or Kelly's personal liability." *Id.* at 1832. So, Judge Leinenweber found that the government "failed to make any connection between Filer and BWC Capital's filings and Gereg's statements." *Id.*

In other words, the issue boiled down to a lack of control. The record included no evidence that Filer controlled the filings made by BWC Capital, or controlled the statements that

Gereg made to the bankruptcy court. So, those misstatements couldn't be attributed to Filer. The government "at a minimum . . . failed to establish the second element . . . that Filer made any misrepresentation." *Id.* at 1831.

For collateral estoppel purposes, then, Judge Leinenweber necessarily decided that Filer is not responsible for any misrepresentations to the bankruptcy court by BWC Capital and Gereg. That's the first hurdle.

But once again, the second hurdle stands in the way. The government does not *have to* prove that Filer made misrepresentation in the bankruptcy. So the Double Jeopardy Clause does not come to Filer's rescue. *See Currier*, 585 U.S. at 499; *Yeager*, 557 U.S. at 119; *Bailin*, 977 F.2d at 280.

### 3. Filer's Statements

Next, Filer seeks to bar evidence that he testified falsely in the bankruptcy proceedings. *See* Mtn. *in Limine*, at 14 (Dckt. No. 280). He points to the acquittals on Counts 14 and 15.

Counts 14 and 15 alleged that Filer made false statements in violation of two different statutes: 18 U.S.C. § 157 and 18 U.S.C. § 1623.

Again, to prove a violation of section 157, the government needed to prove "(1) that [Filer] engaged in a fraudulent scheme, (2) that [Filer] made misrepresentations to the bankruptcy court, and (3) in order to further the scheme." *See Holstein*, 618 F.3d at 611–12. Meanwhile, to prove a violation of section 1623, the government needed to show that Filer made a false material declaration in a court proceeding. *See Gellene*, 182 F.3d at 590. A material statement is one that has a tendency to influence, or was capable of influencing, the decision of the decisionmaker to which the statement was addressed. *Id.*

Counts 14 and 15 alleged that Filer made three different false statements under oath: (1) that he didn't sign the cover letter which said that all records had been produced to the bankruptcy trustee, (2) that he didn't know who backdated the change-in-terms agreement, and didn't know whether his law firm was the one who provided legal services relating to the agreement, and (3) that Gereg was the one who suggested the use of the confession-of-judgment clause. *See* Trial Tr. Vol. 10-A, at 1834 (Dckt. No. 212).

The Court will address Judge Leinenweber's rulings on each of the statements in turn.

First, Judge Leinenweber acquitted Filer on bankruptcy fraud in connection with the production letter. Filer testified that he didn't sign the letter himself, and that he couldn't remember whether he had seen the production letter with his signature before it was sent to the trustee. *Id.*

Judge Leinenweber found that "no reasonable jury could conclude" that Filer was lying about his recollections. *Id.* In other words, Judge Leinenweber determined that there was no

evidence showing that Filer signed the letter himself, or that he did remember seeing the production letter before it went to the trustee.

The core of that ruling is the conclusion that Filer did not make a *mis*representation to the bankruptcy court, nor did he make a *false* declaration in a court proceeding.

Judge Leinenweber also determined that Filer's testimony did not conceal the alleged fraud because Filer later testified about his law firm's production of the documents. Judge Leinenweber ruled that any statement made by Filer could not be material when viewed in the totality of his deposition testimony. *Id.* at 1834–35.

Second, Judge Leinenweber acquitted Filer on bankruptcy fraud in connection with the change-in-terms agreement. Filer testified that he did not remember who prepared the change-in-terms agreement or whether anyone at his law firm prepared it. *Id.* at 1835.

Once again, Judge Leinenweber ruled that no "rational jury could conclude that the testimony was false." *Id.* His reasoning was similar, too. "Filer did not unequivocally testify to a fact. Instead, he stated that he did not recall events that happened more than a year previous. Nothing in the record refutes Filer's testimony regarding his recollection at the time of the deposition." *Id.*

In essence, Judge Leinenweber found no evidence that called into question Filer's lack of recollection. That is, there was no evidence that Filer truly did remember. Judge Leinenweber acquitted Filer on that basis.

Judge Leinenweber also found that Filer's testimony did not conceal the alleged fraud, nor was the testimony material.

Third, Judge Leinenweber acquitted Filer on bankruptcy fraud in connection with the confession-of-judgment clause. Filer testified that Gereg was the one who suggested the use of the confession-of-judgment clause. *Id.* at 1836.

Judge Leinenweber did not rule that the statement was not false. *Id.* In fact, he noted the mixed record about the truthfulness of that statement. Instead, Judge Leinenweber said that there was no concealment. "While the record is not entirely clear whether this testimony was accurate, even taken in the light most favorable to the government, this statement did not conceal any alleged fraud and was not material." *Id.*

As before, Filer surmounts the first hurdle for double jeopardy, for some of the evidence. But the second hurdle trips him up. The government does not need to prove, in the second trial for wire fraud, that Filer gave false testimony in the bankruptcy. It is not an ultimate issue, so double jeopardy does not come into play. *See Currier*, 585 U.S. at 499; *Yeager*, 557 U.S. at 119; *Bailin*, 977 F.2d at 280.

####        4.        Withholding Documents

Finally, Filer seeks to exclude evidence related to withholding documents from the bankruptcy trustee. *See* Mtn. *in Limine*, at 17 (Dckt. No. 280). He rests his argument on the acquittal on Count 8, one of the counts of bankruptcy fraud.

To prevail on Count 8, the government needed to show that Filer knowingly and fraudulently withheld documents from the bankruptcy trustee, and that the trustee was entitled to possess those documents. *See* Trial Tr. Vol. 10-A, at 1832–33 (Dckt. No. 212).

Judge Leinenweber addressed the sufficiency of the evidence on this count twice, and came to different conclusions.

Judge Leinenweber denied a motion for acquittal at the close of the government's case in chief. He noted that the evidence "undeniably shows that Filer directed Brandt to withhold the documents." *Id.* at 1833. Even so, Judge Leinenweber concluded that it was not clear from the evidence whether the documents were responsive, and whether the decision to withhold was done with fraudulent intent. *Id.* at 1833–34.

At the close of all of the evidence, Judge Leinenweber changed course. He pointed out that the bankruptcy trustee eventually received all of the documents. In Judge Leinenweber's view, the delay could not "amount to a finding of fraudulent intent" because "all of the documents that were required to be produced were, in fact, produced." *See* Trial Tr. Vol. 13-A, at 2399 (Dckt. No. 209).

Filer argues that the government should be precluded from presenting any evidence or argument related to Filer's alleged withholding of documents. *See* Mtn. *in Limine*, at 17 (Dckt. No. 280).

The Court disagrees. Again, the Seventh Circuit already gave its blessing to the notion that withholding documents from the bankruptcy trustee was part of the wire-fraud scheme.

The Seventh Circuit pointed to evidence "that after Barsanti Woodwork filed for bankruptcy and the bankruptcy trustee subpoenaed documents related to Filer's representation of Barsanti Woodwork, Filer instructed his colleague to withhold the assignment documents and related correspondence from the trustee." *See Filer*, 56 F.4th at 436.

The Seventh Circuit explained that a jury could consider evidence about concealing documents as evidence of wire fraud. "[A] rational jury could find that Filer intended to defraud Barsanti Woodwork's creditors. Considering evidence that Filer directed his colleague to withhold documents from the bankruptcy trustee, the jury could have reasonably rejected Filer's argument that filing for bankruptcy was an act of transparency." *Id.*

The Seventh Circuit then commented on the limits of double jeopardy. The Double Jeopardy Clause does not reach whether Filer instructed others to withhold documents, because Judge Leinenweber did not hang his hat on the notion that Filer gave no such instruction.

"The district court acquitted Filer of withholding documents from the bankruptcy trustee because it reasoned that all of the documents were eventually produced. Whether that is a sufficient basis for acquittal is not before us. What matters is that the district court did not find that Filer did not instruct his colleague to withhold the documents, so our consideration of that evidence here does not offend the Double Jeopardy Clause." *Id.* at 436 n.4.

In other words, the Seventh Circuit expressly concluded that the withholding of documents in question was fair game – *not* out of bounds – when it came to the charges of wire fraud. Judge Leinenweber did not acquit Filer based on a lack of evidence about instructing someone to withhold evidence. Instead, Filer was acquitted because the bankruptcy trustee eventually received the documents.

Judge Leinenweber never specifically found that Filer *did not* tell his colleagues to withhold documents. So the Double Jeopardy Clause does not come into play on that point.

In any event, the first hurdle under the Double Jeopardy Clause is a barrier, but the second hurdle is insurmountable. The government can prove – but doesn't *have to* prove – that Filer withheld documents in the bankruptcy to prove its case. The government can satisfy its burden of proof for wire fraud without presenting evidence about withholding evidence. So double jeopardy is not at issue. *See Currier*, 585 U.S. at 499; *Yeager*, 557 U.S. at 119; *Bailin*, 977 F.2d at 280.

## IV.    Rule 403

The Double Jeopardy Clause does not prevent the government from presenting the specific pieces of evidence in question. But Filer also invokes the Federal Rules of Evidence, including Rule 403. And that's where he hits paydirt.

At the final pretrial conference, the government identified three, and only three, pieces of evidence that it wanted to present about the bankruptcy. The government disclaimed any intention of presenting the specific pieces of evidence covered by this motion. For example, the prosecution does not intend to offer evidence that Filer was responsible for false statements in the bankruptcy, and so on.

This Court will hold the government to it. *See* Fed. R. Evid. 403. The probative value of the evidence seems slight. The government couldn't prove it last time, so the government presumably is unlikely to be able to prove it a second time. There is no reason to think that a second try would lead to a different result. Presenting evidence that is unlikely to move the needle would waste time, too.

Plus, the government represented that it wouldn't go there. Filer has prepared for trial in reliance on that representation. It would create unfair prejudice to allow the government to swap horses at this late stage.

For those reasons, the Court excludes the specific pieces of evidence about the bankruptcy under Rule 403, except the three categories of evidence that this Court has expressly

28

blessed. This Court will allow the government to lay the necessary foundation and provide the context, too, so that the jury can understand what it is hearing. And if Filer opens the door, then the government can drive through it.

In the meantime, the government must seek leave of court before presenting any other evidence about the bankruptcy.

## Conclusion

For the foregoing reasons, Filer's motion *in limine* about the bankruptcy (Dckt. No. 280) is granted in part and denied in part.

The Double Jeopardy Clause does not prevent the government from presenting evidence about (1) the existence or timing of the bankruptcy; (2) the presentation of the assignment-related document at the creditors' meeting; and (3) the initial withholding of documents from the bankruptcy trustee.

The Double Jeopardy Clause does not apply to the bankruptcy generally, or to the discrete pieces of evidence about the bankruptcy discussed above.

Under Rule 403, the government is barred from offering any evidence, or making any argument, that: (1) Filer made misrepresentations to the bankruptcy court through the bankruptcy filings and statements by Fawkes; (2) Filer made misrepresentations to the bankruptcy court through BWC Capital's filings or Gereg's statements; (3) Filer made a false statement when he said that he didn't sign the document-production cover letter; (4) Filer's testimony about the document-production cover letter concealed the alleged bankruptcy fraud or was material to the bankruptcy trustee; (5) Filer made a false statement when he said that he didn't remember who prepared the change-in-terms agreement; (6) Filer's testimony about the change-in-terms agreement concealed the alleged bankruptcy fraud or was material to the bankruptcy trustee; (7) Filer's testimony about the confession-of-judgment clause concealed the alleged bankruptcy fraud or was material to the bankruptcy trustee; and (8) the documents initially withheld by Filer were not eventually produced to the bankruptcy trustee.

The government must obtain preclearance from this Court before offering any other evidence related to the bankruptcy.

Date: January 28, 2025

_____
Steven C. Seeger
United States District Judge

29