UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

EDWARD LEE FILER

No. 19 CR 565-1

Judge Steven C. Seeger

## GOVERNMENT'S STATEMENT REGARDING REMEDY FOR VIOLATING DEFENDANT'S ATTORNEY-CLIENT PRIVILEGE

The government regrets that two of its counsel caused the circumstances where a witness stated during an interview the contents of communications that had previously been excluded from the first trial as subject to defendant Edward Filer's attorney-client privilege.

The remedy for the violation must ensure a fair trial by eliminating any prejudice caused to the defendant, *Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("Past decisions of this Court demonstrate that the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor"), and remedy should be separate and distinct of any penalties directed to the individual prosecutors. *See United States v. Hasting*, 461 U.S. 499, 506 (1983).

The remedies sought by defendant's motion include: (1) dismissal of the indictment; (2) declaration of a mistrial with disqualification of all counsel who have reviewed the privileged information; (3) barring all evidence relating to defendant's concealment of records from the bankruptcy trustee; (4) suppressing the testimony of

Steven Hartmann; (5) entering an order precluding the government from ongoing violations of defendant's attorney-client privilege, and (6) granting any other and further relief as is appropriate. As explained in greater detail below, these remedies are not appropriate here because defendant has not suffered new prejudice. Simply put, no investigative leads were developed, or further evidence or information acquired, as a result of the January 27, 2025, interview.

In summary, the content of the privileged information itself, and the timing of its acquisition, are important to determining the quantum of its prejudice. The privileged information at issue here is substantially the same information that was first acquired on June 23, 2021, the evening before the government rested its case during the first trial. Thus, there is no new prejudice caused to defendant. The information, while germane to defendant's alleged concealment of records from the bankruptcy trustee and particularly his intent, was not information from which leads were developed or further evidence or information acquired. The additional information obtained on January 27, 2025, was the witness's evaluation of the defendant's credibility, which is inadmissible, and other information of very limited consequence, such as the number of times that the witness met with the defendant prior to the 2015 document production. Using the poisonous tree analogy, the privileged information is its own limb.

The government respectfully submits that suppression of the privileged information is the appropriate remedy and acknowledges that the question of penalties to the individual prosecutors is a subject for another day. The proposed

2

remedies of dismissal, mistrial, and exclusion of all evidence relating to the alleged concealment are disproportional to the prejudice to be removed.

## I.     Dismissal and Mistrial Are Not Appropriate Remedies

Dismissal and mistrial are not appropriate remedies because the trial, to this point, has not been prejudiced by the privileged information. The information, first obtained on June 23, 2021, has not been introduced through testimony, and no evidence derived from it has been introduced. "[D]ismissal of the indictment as a sanction for a violation of a defendant's attorney-client privilege is inappropriate absent 'demonstrable prejudice.'" *United States v. DeLuca*, 663 F. App'x 875, 878 (11th Cir. 2016) (collecting cases). Where privileged information is possessed by the government but has not been used at trial, the remedy should be exclusion of the privileged information so that defendant is not prejudiced. *See generally, United States v. White*, 879 F.2d 1509, 1513 (7th Cir. 1989) (observing that if the government obtains client secrets from attorney *that are then used* in a criminal trial to the client's substantial prejudice, it may be a violation of defendant's due process rights under the Fifth Amendment); *see also, United States v. Skeddle*, 989 F. Supp. 890, 898 (N.D. Ohio 1997) (addressing circumstance where government possessed records from search of law office, some of which may have been privileged).

## II.     Disqualification of Counsel is Not an Appropriate Remedy

In this case, the privileged information is very discrete in that it involves information conveyed to the general counsel of the defendant's law firm in July 2015 regarding a production of discovery that was made in April 2014. While the government's counsel are aware of the content of the statements, it has had no impact on the government's trial strategy, and, without using the statements at trial as testimonial evidence or for impeachment purposes, the knowledge provides the government with no advantage. Accordingly, suppression of the privileged statements remedies the government's error, and disqualification of counsel is disproportionate to the prejudice at issue.

While knowledge of the statements could theoretically afford the government an advantage in cross-examining the defendant should he decide to testify in his own defense, this is remedied by precluding the government from using the information in such cross-examination. The government originally acquired the privileged information during the prior trial on June 23, 2021, before defendant testified on June 28, 2021. The potential for prejudice from the information remains the same now in 2025 as it was when he testified then in 2021. The government did not use the information in its cross-examination of defendant in 2021 and will not use it should defendant testify in this trial.

### III.    Barring All Evidence Related to the Concealment of Records is a Remedy Disproportionate to the Prejudice

The government's evidence related to document concealment concerns events that took place in March and April 2014. Specifically, on April 9, 2014, in response to a subpoena served on March 19, 2014, the defendant caused a discovery production to be tendered to the bankruptcy trustee with a cover letter representing that all responsive documents were being produced and acknowledging that the trustee had waived privilege. The evidence includes electronic communications between Ashley Brandt and defendant from that timeframe and the testimony of Mr. Brandt as to his conversations with defendant, as well as evidence of what documents were produced when, and actions taken with respect to different documents when Mr. Brandt reviewed them in Relativity in 2014. The last bit of conduct within this evidence took place on April 9, 2014 - 15 months' before service of the July 6, 2015 subpoena, to Freeborn & Peters care of defendant. What defendant said to Mr. Hartmann in July 2015 concerning the document production from 15 months' earlier is not a part of the evidence the government intends to introduce on the subject,[1] and it is not the source or cause of any such evidence.[2]

---

[1] The government anticipates the concealment evidence will largely mirror the evidence offered in the first trial. A distinction is that the government does not plan to introduce or identify any of the concealed records through Mr. Hartmann, but will instead seek to introduce evidence as to specific documents through Alex Schiller, the Senior Litigation Support Analyst who worked on the document productions at Freeborn & Peters.

[2] By way of background, on March 21 and 29, 2017, then-AUSA Brian Netols interviewed Mr. Hartmann as part of the grand jury investigation concerning his actions coordinating Freeborn & Peters' production of records in response to a subpoena issued to the firm by the bankruptcy trustee. During these interviews, AUSA Netols did not ask Mr. Hartmann any

questions about whether he had any conversations with defendant concerning the records production and Mr. Hartmann did not volunteer that he had any such conversations.

On June 23, 2021, in preparation of Mr. Hartmann's expected trial testimony the following day, AUSA Netols interviewed Mr. Hartmann, specifically informing Mr. Hartmann that the purpose of this interview was to prepare Mr. Hartmann for his upcoming testimony. It was during this interview that Mr. Hartmann, accompanied by additional Freeborn & Peters' counsel, informed the government that he had conversations with the defendant in his (Mr. Hartmann's) capacity as an attorney coordinating the law firm's production in response to the bankruptcy trustee's records subpoena. Mr. Hartmann's counsel further informed the government that he had brought copies of Mr. Hartmann's notes (1) of conversations with defendant (taken for the purpose of responding to the records subpoena), (2) relating to representation of defendant as Freeborn's corporate representative at the deposition, and (3) concerning his, Mr. Hartmann's, advice to Freeborn & Peters. AUSA Netols responded that he was not going to ask Mr. Hartmann about his representation of defendant at the deposition and did not want any notes concerning same, nor did the government want notes concerning Mr. Hartmann's Advice to Freeborn & Peters. Subsequently, during this interview, Mr. Hartman provided information on three substantive conversations between July 16 and July 28, 2015, that he, Mr. Hartmann, had with defendant in the course of coordinating the law firm's response to the records subpoena. In sum, defendant's statements to Mr. Hartmann are best characterized background information (names and contact information) and as self-exculpatory.

The following day, June 24, 2021, Judge Leinenweber, restricted the scope of Mr. Hartmann's testimony to exclude defendant's statements made to Mr. Hartmann after July 6, 2015, based on attorney-client privilege. The government failed to appreciate the full ramifications of the ruling's rationale in the moment, and proceeded to finish the trial without revisiting the topic.

In preparing for the current trial, the government waivered in its thoughts about whether to call Mr. Hartmann, as it planned to introduce records that had been withheld from the April 9, 2014, document production through Alex Schiller, the Senior Litigation Support Analyst who worked on the productions in 2014 and 2015. The government ultimately determined that it would call Mr. Hartmann as a witness and on January 27, 2025, SAUSA Netols interviewed Mr. Hartmann to prepare for his trial testimony. The purpose of the interview was not to obtain additional information, but to refresh and assess Mr. Hartmann's recollection of the process that he followed in making the 2015 production. The interview was not conducted as a question-and-answer session. Instead, Mr. Hartmann was asked to provide a chronological narrative. During this meeting, Mr. Hartmann volunteered two new items of information: that he may have only had two, not three, substantive conversations with defendant in July 2015; and that he, Mr. Hartmann, reached certain conclusions as to defendant's credibility.

The government did not obtain any leads from the June 23, 2021, or January 27, 2025, interviews of Mr. Hartmann, or otherwise obtain derivative evidence. Based on the Court's conclusion that the law of the case is that Judge Leinenweber found that an attorney-client privilege existed between Mr. Hartmann and the defendant, the government concedes that information conveyed in the January 27, 2025, interview violated defendant's attorney-client privilege with Mr. Hartmann.

While defendant's statements to Mr. Hartmann in July 2015 should certainly be barred from introduction at trial, those statements are completely independent from the rest of the government's evidence regarding the alleged concealment of records in April 2014.

Accordingly, the remedy proportional to the possible prejudice is the barring of the privileged information that is the source of the prejudice.

## IV.    Other Relief

An injunction is not necessary because this Court has already entered its order on January 31, 2025, and the government counsels' violation of privilege was not a deliberate effort to violate the defendant's privilege, but rather a failure to properly appreciate the full nature of Judge Leinenweber's June 24, 2021, ruling and the implications of same, and a failure to thereafter bring any questions about the scope of the ruling to Judge Leinenweber or later to this Court for clarification and inform the witness Mr. Hartmann of Judge Leinenweber's ruling.

## CONCLUSION

The remedy must be fashioned to ensure defendant receives a fair trial. As explained herein, because the prejudice presented by defendant's privileged statements to Mr. Hartmann in July 2015 is remedied by barring the government's use of such statements for any purpose during this trial with the acknowledgment that any penalties for the violation will be addressed at a different time.

Respectfully submitted,

TIMOTHY M. O'SHEA
United States Attorney
Western District of Wisconsin

Dated: February 2, 2025    By:    */s/ Jeffrey S. Snell*
JEFFREY S. SNELL
KRISTIN PINKSTON
Assistant United States Attorneys
BRIAN P. NETOLS
Special Assistant U.S. Attorney
219 South Dearborn Street
Chicago, Illinois 60604
312 353-5300